UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT (Dkt.
40, filed May 9, 2016)

# I.     INTRODUCTION

On November 25, 2015, plaintiff Steve Oddo filed a putative class action against defendant United Technologies Corporation ("UTC") in this Court.  Dkt. 1.  On February 12, 2016, defendant UTC filed a motion to dismiss plaintiff's complaint.  Dkt. 19.  On February 18, 2016, both parties agreed that, in lieu of responding to the UTC's motion, Oddo would file an amended complaint pursuant to Rule 15.  Dkt. 24.  On March 7, 2016, Oddo and additional plaintiffs Rajene Reardon, Anthony LaSala, Linda Lamm, Keith Kimball, Norman Klinge, and Dan Gallagher, filed the operative amended complaint against UTC, and added defendants Arcoaire Air Conditioning and Heating ("Arcoaire"), Carrier Corporation ("Carrier"), Bryant Heating and Cooling Systems ("Bryant"), Comfortmaker Air Conditioning and Heating ("Comfortmaker"), and International Comfort Products, LLC ("ICP").  Dkt. 27 ("AC").  In brief, plaintiffs allege injury arising from manufacturing defects in heating, ventilation, and air conditioning units ("HVAC units") manufactured by ICP, which purportedly causes a sludge or tar to form in the system, making it likely that the HVAC units will fail at some point in the future.  Id.  ¶¶ 1–2.

Plaintiffs assert the following claims in the operative complaint:  (1) violations of the Magnuson-Moss Warranty Act ("MMWA"); (2) negligent misrepresentation; (3) unjust enrichment; (4) breach of contract of warranty; (5) fraudulent concealment; (6) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (7) false and misleading advertising, Cal. Bus. & Prof. Code §§ 17500 et seq.; (8) violations of the California Consumer Legal Remedies Act ("CLRA");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

(9) breach of express warranty, Cal. Com. Code § 2313; (10) violations of the Song-Beverly Act; (11) violation of the Arizona Consumer Fraud Act ("ACFA"); (12) breach of implied warranty, Ariz. Rev. Stat. § 47-2314; (13) violations of the Florida Deceptive and Unfair Trade Practices Act ("DUPTA"); (14) breach of express warranty, Fla. Stat. § 672.313; (15) breach of implied warranty of merchantability, Fla. Stat. § 672.314; (16) violations of the Georgia Uniform Deceptive Trade Practices Act ("GA UDTPA"); (17) violations of the Georgia Fair Business Practices Act ("GFBPA"); (18) breach of express warranty, O.C.G.A. § 11-2-313; (19) breach of implied warranty of merchantability, O.C.G.A. § 11-2-314; (20) violations of Indiana Deceptive Consumer Sales Act ("IDCSA"); (21) breach of express warranty, Ind. Code Ann. § 26-1-2-313; (22) breach of implied warranty of merchantability, Ind. Code Ann. § 26-1-2-314; (23) violations of the Maryland Consumer Protection Act ("Maryland CPA"); (24) breach of express warranty, Md. Com. Code § 2-313; (25) breach of implied warranty of merchantability, Md. Com. Code § 2-314; (26) violations of Missouri Merchandising Practices Act ("MMPA"); (27) breach of express warranty, Mo. Rev. Stat. § 400.2-313; and (28) breach of implied warranty, Mo. Rev. Stat. § 400.2-314.

On May 9, 2016, defendants filed the instant motion to dismiss plaintiffs' AC. Dkt. 40 ("MTD"). Plaintiffs filed an opposition on June 10, 2016, dkt. 43 ("Opp'n"), and defendants filed a reply on June 27, 2016, dkt. 44 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiffs allege the following facts. UTC manufactures and distributes heating ventilation and air conditioning ("HVAC") systems through its subsidiary, ICP. AC ¶ 56. ICP is a wholly owned subsidiary of UTC and manufactures HVAC brands including, but not limited to, Carrier, Bryant, Arcoaire, Comfortmaker, and Heil.[1] Id. ¶ 57.

---

[1] Defendants assert that Carrier Corporation is the proper defendant in this action because UTC, Carrier's parent entity, does not manufacture HVAC units and Arcoaire, Bryant, Comfortmaker, and ICP do business as Carrier. MTD at 3 n.1. As a result, both parties refer to defendants as "Carrier." See Opp'n at 1 & n.1. Accordingly, the Court likewise refers to defendants collectively as "Carrier."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Plaintiffs seek to recover damages that arose from an alleged manufacturing defect in their HVAC systems that has caused widespread failures of Thermal Expansion Valves ("TXVs") used in the units. Id. ¶ 1. The TXV "is a precision valve that controls the expansion of refrigerant central to the cooling process." Id. Plaintiffs allege that

> [t]he defect arises from a chemical rust inhibitor added to the manufacturing process . . . which was incompatible with the refrigerant and lubricating oil used in the HVAC systems. The rust inhibitor reacts with the refrigerant and/or oil and causes a tar or sludge to form when the systems are put into service. This sticky substance then circulates through the system, and builds up layers of deposits on the inside of the system. . . . [T]he tar can cause the TXV to become stuck, rendering the system inoperable.

Id. Plaintiffs further aver that Carrier was aware of the defect as early as 2013, but continued to sell affected units "unabated." Id. ¶ 4. Carrier admitted the existence of the manufacturing defect in dealer service bulletins ("DSBs") in 2014, but did not pull the affected systems from the shelves of distributors. Id. Plaintiffs allege that Carrier did not distribute the DSBs publicly, therefore consumers and contractors were not made aware of the defect. Id.

Carrier's HVAC systems are sold with a ten-year limited parts warranty if the consumer registers the units, otherwise the limited warranty lasts five years. Id. ¶ 30.

According to plaintiffs, Carrier's "purported solution for the manufacturing defect under their warranty program does not cure the defect." Id. ¶ 19. Carrier initially provided replacement TXVs and a labor credit of $400 between July 2014 and October 2014. Id. ¶ 20. On October 23, 2014, plaintiffs allege that Carrier adopted a new approach by providing to contractors a new chemical, A/C Re-New, that was supposed to break apart the sludge in systems. Id. A/C Re-New was provided at no cost and in conjunction with a $195 labor credit. Id. Plaintiffs contend, however, that both of these courses of action fail to completely remedy the defect—the existence of chemical impurities in the HVAC system. Id. ¶¶ 22–23. Moreover, plaintiffs assert that "A/C Re-New *merely adds more contamination*" and that "[t]he long-term effects of this so-called fix are, at best, unknown. Id. ¶¶ 23, 25. Plaintiffs aver that "the injection of A/C Re-New itself may shorten the lifespan of the equipment or cause other issues in the future, after the warranty has expired, while the original contamination still remains in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

system." Id. ¶ 25. One of Carrier's DSB even warns that a second injection of A/C Re-New "could have negative long term system effects." Id. ¶ 26.

According to plaintiffs, an adequate remedy would have included "flushing the contaminated refrigerant and oil from the systems, replacing filters, and replacing TXV valves." Id. ¶ 27. However, Carrier is allegedly refusing to provide non-defective replacements and/or fully compensate consumers and contractors. Id. ¶ 32. Plaintiffs aver that Carrier's inadequate warranty program shifts the costs associated with the manufacturing defect onto consumers and contractors. Id. ¶ 27. Plaintiffs further assert that limitations on their warranties are unconscionable because the defective HVAC units fail within weeks or months of their installation and because customers "unknowingly agreed to a grossly one-sided, warranty contract of adhesion, which they had no opportunity to negotiate." Id. ¶ 32.

Plaintiffs allege that Oddo, a resident of California, purchased a new Arcoaire-branded HVAC system in May 2015. Id. ¶ 36. Plaintiffs aver that, "[p]rior to his purchase, Oddo extensively reviewed Arcoaire's website and marketing materials . . . . The materials that Oddo reviewed advertised that Arcoaire systems are " BUILT TO LAST" and that the system he purchased was "high efficiency" and capable of up to a 16 Seasonal Energy Efficiency Ratio ("SEER"). Id. None of those materials disclosed the existence of a manufacturing defect. If they had, Oddo would not have purchased the system. Id. In addition, Oddo was unaware of Carrier's DSBs at the time of his purchase. Id. In August 2015, Oddo's system failed as a result of a "sticking TXV," and per the manufacturer's recommendation, Oddo had his HVAC unit injected with A/C Re-New. Id. ¶ 37. Oddo claims that, due to the manufacturing defect in his HVAC system, his energy bills have increased and he has incurred out-of-pocket expenses for the injection of A/C Re-New. Id. On September 8, 2015, Oddo—through his counsel—sent a certified letter "to Warranty Claims, P.O. Box 4808, Syracuse, NY 13221, stating that, 'UTC and/or its subsidiaries have failed to comply with the terms of their express warranties by failing to replace the defective systems and/or component parts.'" Id. ¶ 38. In the letter, which is attached to the operative complaint, Oddo stated that UTC has violated the California Consumer Legal Remedies Act, the Magnusson-Moss Warranty Act, and other state statutory and common law. Dkt. 27-1 ("Oddo Letter"). Oddo demanded, inter alia, that UTC "[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'** |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

"[c]ompensate Claimant and all purchasers and contractors who incurred costs and/or labor to repair defective systems." Id.

Reardon, a resident of Arizona, purchased a new home in October 2013 which came with two brand-new Carrier HVAC systems included. Id. ¶ 39. Plaintiffs allege that Reardon received product information from her home builder regarding the HVAC systems indicating that they were capable of up to 16 SEER. Id. However, this information did not disclose the existence of the manufacturing defect. Had the information disclosed a defect, plaintiffs aver that Reardon would have insisted that her home builder provide a non-defective system. Id. In addition, Reardon was unaware of Carrier's DSBs at the time of her purchase. Id. Soon after Reardon began using the systems in April 2015, she allegedly noticed that one of the systems was blowing hot air and contacted an authorized contractor. Id. ¶ 40. On May 1, 2015, the contractor replaced the TXV, pumped out the refrigerant, added new refrigerant, and then installed a new filter so that there would not be any "cross contamination." Id. Although the parts were provided under the warranty, the labor was not, such that Reardon allegedly paid $885 "for the diagnostic visit and labor costs to fix her Carrier system." Id.

LaSala, a resident of Florida, purchased a new Carrier HVAC unit in April 2014. Id. ¶ 41. LaSala received product information along with his new system, which advertised that his unit was capable of up to of up to 15 SEER. Id. Plaintiffs asserts that LaSala was unaware of Carrier's DSBs at the time of purchase and the product information he received failed to disclose the existence of a manufacturing defect. Id. LaSala would not have had the unit purchased and installed the HVAC unit had the product information disclosed the existence of a manufacturing defect. Id. In the spring of 2015, plaintiff LaSala's HVAC system was allegedly not cooling, so he contacted the contractor that had installed the unit, who then injected the unit with A/C Re-New. Id. ¶ 42. The contractor did not charge plaintiff LaSala for the additive or the labor, but he informed LaSala that the A/C-Renew was "just a bandaid." Id.

Lamm, a resident of Georgia, purchased two new Bryant HVAC systems costing approximately $10,000 total in March 2015. Id. ¶ 43. Prior to purchase, Lamm reviewed Bryant's website, which stated that consumers who purchased the same model would "enjoy reliable, whole-home comfort" and that the model was "designed to operate consistently and quietly with SEER ratings of 15 or higher." Id. The Certificate of Product Ratings for Lamm's system states that it has a 16 SEER. Id. Neither the Bryant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

website nor the Certificate of Product Ratings disclosed the existence of a defect. Id.
Plaintiffs allege that Lamm would not have purchased her HVAC units if that material
had disclosed a defect. Id. In addition, Lamm was unaware of Carrier's DSBs at the time
of her purchase. Id. In June 2015, Lamm's downstairs system allegedly completely shut
down. Id. ¶ 44. On June 25, 2015, an authorized contractor dispatched a service
technician to her home, who reported injecting A/C Re-New as part of Bryant protocol.
Id. Concerned about the long term effects of A/C Re-New, Lamm contacted Bryant
customer service on July 8, 2015, who told her that they did not know what the long term
effects of A/C Re-New would be. Id. Nonetheless, A/C Re-New was added to Lamm's
system. Id.

Kimball, a resident of Maryland, purchased and installed a new Bryant HVAC
system on March 2013. Id. ¶ 45. Plaintiffs allege that, prior to Kimball's purchase,
Kimball reviewed Bryant brochures that he received from his installer and reviewed
Bryant's website. Id. The system he purchased was advertised as being capable of up to
22 SEER. Id. None of the Bryant documents disclosed the existence of a manufacturing
defect. Id. If they had, Kimball would not have purchased the system. Id. In addition,
Kimball was unaware of Carrier's DSBs at the time of his purchase. Id. In May 2015,
Kimball's system allegedly failed to blow cool air. Id. ¶ 46. An authorized contractor
advised that repair "would entail installation of a new valve, draining of old refrigerant,
adding new refrigerant and a purging of the system with nitrate to clear all contaminants,
costing Kimball $900." Id. Unwilling to incur such out-of-pocket-expenses, Kimball
contacted another technician, who charged him $411 to install a new TXV and filter
dryer. Id. Kimball has noticed that his system's performance is slowly declining. Id.

Klinge, a resident of Missouri, purchased a Comfortmaker HVAC system in April
2015. Id. ¶ 47. Prior to purchase, plaintiffs allege that Klinge reviewed the system's
product efficiency and capacity information. Id. Klinge's system was advertised as
being capable of 13 SEER which is also stated in the product specifications booklet he
received at the time of purchase. Id. None of these materials disclosed the existence of a
manufacturing defect. Id. If they had, Klinge would not have purchased his system. Id.
In addition, Klinge was unaware of Carrier's DSBs at the time of the purchase and
installation of his system. Id. In the summer of 2015, Klinge's noticed that his system
was not working properly. Id. ¶ 48. Klinge called the authorized installer, who
recommended adding approximately four ounces of refrigerant, but this did not solve the
problem. Id. Klinge called another service technician, who diagnosed the problem as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

"sticking TXV." <u>Id.</u> In September 2015, a technician replaced the TXV, which Klinge purchased. <u>Id.</u> However, the system allegedly continued to fail, such that the service technician injected it with A/C Re-New. <u>Id.</u> Klinge has incurred approximately $433 in out-of-pocket expenses, and avers that even after the system was injected with A/C Re-New, it has failed to operate properly. <u>Id.</u> Klinge contacted Comfortmaker's customer service but was told that they would not do anything about this problem and would not reimburse him for his out-of-pocket expenses. <u>Id.</u>

Gallagher, a resident of Indiana, purchased a new Bryant HVAC system in May 2014. <u>Id.</u> ¶ 49. Gallagher reviewed Bryant's website and marketing materials prior to purchase. Gallagher's system was advertised as being capable of up to 16 SEER but at installation it was specified as 13 SEER because of a lack of certain equipment on the existing furnace/air handler. <u>Id.</u> None of the documents disclosed the existence of a manufacturing defect. If they had, Gallagher would not have purchased the unit. <u>Id.</u> In addition, Gallagher was unaware of Carrier's DSBs at the time of his purchase. Gallagher's unit allegedly had two system failures within 90 days of being turned on. <u>Id.</u> ¶ 50. On the first failure, the indoor coil iced up and the service technician replaced the TXV. Four hours later, the same failure occurred. <u>Id.</u> In response, the service technician replaced the TXV and the indoor coil. <u>Id.</u> Gallagher contacted Bryant by phone on August 26, 2014, but Bryant allegedly did not reveal the ongoing TXV problem. <u>Id.</u> In early May 2015, Gallagher's system allegedly stopped working, and it was serviced and injected with A/C Re-New. <u>Id.</u>

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting <u>Balisteri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

"Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

## IV.   DISCUSSION

### A.    Plaintiffs' Warranty Claims

In the AC, plaintiffs bring fifteen breach of warranty claims against Carrier: (1) violations of the Magnuson-Moss Warranty Act ("MMWA"); (2) breach of contract of warranty; (3) breach of express warranty, Cal. Com. Code § 2313; (4) violations of the Song-Beverly Act; (5) breach of implied warranty, Ariz. Rev. Stat. § 47-2314; (6) breach of express warranty, Fla. Stat. § 672.313; (7) breach of implied warranty of merchantability, Fla. Stat. § 672.314; (8) breach of express warranty, O.C.G.A. § 11-2-313; (9) breach of implied warranty of merchantability, O.C.G.A. § 11-2-314; (10) breach of express warranty, Ind. Code Ann. § 26-1-2-313; (11) breach of implied warranty of merchantability, Ind. Code Ann. § 26-1-2-314; (12) breach of express warranty, Md. Com. Code § 2-313; (13) breach of implied warranty of merchantability, Md. Com. Code § 2-314; (14) breach of express warranty, Mo. Rev. Stat. § 400.2-313; and (15) breach of implied warranty, Mo. Rev. Stat. § 400.2-314.  The MMWA creates a civil cause of action for consumers to enforce the terms of implied or express warranties. See 15 U.S.C. § 2310(d).  Thus, plaintiffs' claims under the MMWA "stand or fall with [plaintiffs'] express and implied warranty claims under state law." Clemens v. Daimler Chrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008).

Carrier contends that plaintiffs' breach of warranty claims fail on several grounds: (1) several plaintiffs do not properly allege that they submitted a warranty claim to Carrier; (2) Carrier complied with its obligations under the express warranty; (3) the express warranty is valid and enforceable; (4) plaintiffs cannot alter or expand the express warranty; (5) plaintiffs' implied warranty claims fail because their units are operational; and (6) plaintiffs Reardon, LaSala, and Lamm cannot bring implied warranty claims because they lack privity.  MTD at 8–24.

### 1.    Express Warranty Claims

"A warranty is a contractual promise from the seller that the goods conform to the promise.  If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 830 (2006); see also Martin v. Medtronic, Inc., 63 F. Supp. 3d 1050, 1060 (D. Ariz. 2014); Aprigliano v. Am. Honda Motor Co., Inc., 979 F. Supp. 2d 1331, 1340–41 (S.D. Fla.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| --- | --- | --- | --- |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

2013); <u>Cline v. Advanced Neuromodulation Sys., Inc.</u>, 914 F. Supp. 2d 1290, 1296 (N.D. Ga. 2012); <u>Paper Mfrs. Co. v. Rescuers, Inc.</u>, 60 F. Supp. 2d 869, 882 (N.D. Ind. 1999); <u>Stanley v. Cent. Garden & Pet Corp.</u>, 891 F. Supp. 2d 757, 764–65 (D. Md. 2012); <u>Arthus v. Medtronic, Inc.</u>, 123 F. Supp. 3d 1145, 1151 (E.D. Mo. 2015).

In their complaint, plaintiffs assert that Carrier breached the express warranty provided with each of the HVAC systems.  AC ¶ 123.  The warranty provides: "If a part fails due to defect during the applicable warranty period ICP will provide a new or remanufactured part, at ICP's option, to replace the failed defective part at no charge for the part."  <u>Id.</u>  Carrier also allegedly warranted that its HVAC systems were capable of performing to the advertised SEER rating.  <u>Id.</u>  Plaintiffs aver that Carrier breached this contract by failing to replace defective parts, including stuck TXVs and the HVAC systems.  <u>Id.</u> ¶ 124.  Instead of replacing defective parts, plaintiffs contend that Carrier injected A/C ReNew, which further devalues the systems and presents a likelihood of future problems and reduced longevity.  <u>Id.</u>  Plaintiffs assert that Carrier's failure to purge the system of the contaminants that degrade the efficiency of the systems causes a likelihood of reoccurrence in the future, perhaps after Carrier's warranties have expired.  <u>Id.</u>  Plaintiffs contend that Carrier's limited warranty is "unconscionable and fails in its essential purpose."  <u>Id.</u> ¶ 175.

In the instant motion, Carrier argues that plaintiffs' express warranty claims fail because:  (1) Oddo, LaSala, Kimball, and Klinge do not properly allege that they submitted a warranty claim to Carrier; (2) the express warranty is valid and enforceable; (3) Carrier complied with its obligations under the express warranties; and (4) plaintiffs cannot alter or expand the express warranties.  MTD at 8–19.

### a.    Proper Submission of a Warranty Claim

The MMWA and the laws of California (Oddo), Florida (LaSala), Maryland (Kimball), and Missouri (Klinge) require consumers to provide the manufacturer with an opportunity to cure a failure to comply with a warranty before the consumer may bring an action for breach of warranty.  <u>See</u> 15 U.S.C. § 2310(e) ("No action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply."); Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | | **'O'** |
| Case No. | 8:15-cv-01985-CAS(Ex) | | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | | |

should have discovered any breach, notify the seller of breach or be barred from any remedy"); Md. Code Ann., Com. Law § 2-607(3)(A) (same); Mo. Ann. Stat. § 400.2-607(3)(a) (same); Fla. Stat. Ann. § 672.607(3)(a) (same).

Carrier argues that LaSala,[2] Kimball, and Klinge provided no notice to Carrier that it failed to comply with the warranty. MTD at 10. Carrier further argues that Oddo's pre-litigation notice to Carrier that he intended to file a class action under the Consumer Legal Remedies Act ("CLRA") (1) did not constitute notice that provided Carrier with an opportunity to cure and (2) does not constitute notice on behalf of LaSala, Kimball, and Klinge. Id. at 10–11. Carrier contends that the CLRA letter serves a different purpose than notice pursuant to the warranty. Reply at 4. According to Carrier, the CLRA could not have provided the necessary notice with respect to Oddo because his unit had already been repaired. Id.; see AC ¶ 37 ("Per the manufacturer's recommendation, his system was injected with A/C Re-New. . . . The original chemical contaminant and now additional chemical contaminants remain in Oddo's HVAC system.").

Plaintiffs argue that they "are required only to provide notice in the manner required by the warranty itself" and the relevant warranties required only that the consumer contact the installer, a service technician, or a Carrier dealer to obtain warranty service or repair. Opp'n at 6. Plaintiffs contend that LaSala, Kimball, and Klinge contacted their installers and an authorized contractor in compliance with the warranty. Id. According to plaintiffs, the dealers and distributors are the entities that are expected to notify Carrier of the warranty claims. Id. at 6 n.10. Plaintiffs further argue that none of the relevant state laws require *direct* notice to the manufacturer. However, plaintiffs recognize that "before pursing any legal rights or remedies" the relevant warranties required owners to "notify the Company in writing, by certified or registered letter . . . of any defect or complaint." Id. at 7; see dkt. 40-1, Request for Judicial Notice ("RJN") Exs. 1–7 (warranties).[3] Plaintiffs argue that Oddo's September 8, 2015 letter satisfied

---

[2] Carrier repeatedly refers to Lamm in this section of their brief, though it appears that Carrier intends to refer to LaSala. See MTD at 10.

[3] Carrier requests that the Court take judicial notice of the warranties. See RJN. Plaintiffs have not objected nor disputed the accuracy of the documents. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

this provision in the relevant warranties.  In the letter, Oddo asserted that "UTC and/or its subsidiaries have failed to comply with the terms of their express warranties by failing to replace the defective systems and/or component parts," and demanded, inter alia, the replacement of "the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants."  Oddo Letter.

The statutory notice requirements are intended to permit manufacturers to cure a defect *before* owners initiate legal action.  See, e.g., Cardinal Health 301, Inc. v. Tyco Elecs. Corp., 169 Cal. App. 4th 116, 135 (2008) ("This notice requirement [of Cal. Com. Code § 2607(3)(A)] is designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements."); Gen. Matters, Inc. v. Paramount Canning Co., 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980) ("The notice enables the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the sellers' own liability to the buyer." (quotation marks omitted)); Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010) (interpreting the MMWA and noting: "In order for a manufacturer to respond to a problem with a consumer's product, it first must be notified of the occurrence of the problem.").  The parties are correct that plaintiffs' notice obligation is set forth by statute and supplemented by the warranties. Opp'n at 5–6; Reply at 3; see Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004), aff'd, 168 F. App'x 893 (11th Cir. 2006) (to determine whether a warranty was breached, looking to "the requirements imposed by Florida law, supplemented by the terms of the Limited Warranty").  The warranties unequivocally require notice that "stat[es] the defect or complaint and *a specific request* for repair, replacement, or correction of the product under warranty, mailed at least thirty (30) days before pursuing any legal rights or remedies."  RJN Exs. 1–7 (emphasis added).  Oddo's letter to UTC did not provide such notice with respect to his own HVAC system because

---

basis of the plaintiff's claim."  United States. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  As plaintiffs refer extensively to the warranties in the AC and they form the basis of their claims for breach of express warranty, the Court takes judicial notice of the warranties.  See Hoey v. Sony Elecs. Inc., 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (allowing judicial notice of express warranty); Weinstein v. Saturn Corp., No. 07-cv-0348-MMC, 2007 WL 1342604, at *1 (N.D. Cal. May 8, 2007) ("Because the SAC relies on the warranty and plaintiff has offered the relevant excerpts therefrom, the Court takes judicial notice of the contents of the warranty.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Oddo's system had already been injected with A/C Re-New and he does not allege that his system continued to fail after that intervention. See AC ¶ 37. Indeed, in his letter, Oddo did not ask UTC to cure any defect in *his* HVAC system. See Oddo Letter. Rather, plaintiffs appear to concede that Oddo's letter was intended to serve as the statutorily required notice that Oddo intended to file a class action under the Consumer Legal Remedies Act. See AC ¶ 168 ("In accordance with Cal. Civ. Code § 1782(a) & (d), Oddo has provided Defendants with the appropriate notice and demand but Defendants have failed to make any offer of Class-wide relief. Attached as Exhibit A is Oddo's CLRA notice letter."). Moreover, the Court agrees with Carrier that Oddo's letter did not provide sufficient notice of the alleged defects in LaSala, Kimball, or Klinge's systems because the letter makes no mention of them at all. The relevant warranties require "a *specific* request for repair, replacement, or other correction of *the* product." RJN Exs. 1–7. Oddo's general request that UTC "[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants," is not such a specific request with respect to his own system or the systems of LaSala, Kimball, or Klinge.

Because Oddo, LaSala, Kimball, and Klinge did not afford Carrier with a reasonable opportunity to cure their HVAC system defects, Oddo, LaSala, Kimball, and Klinge failed to fulfill the terms of their express warranties. As a result, their express warranty claims fail. Accordingly, the Court **GRANTS** Carrier's motion to dismiss Oddo, LaSala, Kimball, and Klinge's claims for express breach of warranty and **DISMISSES** those claims without prejudice.

### b.    Validity and Enforceability of the Warranties

With respect to all plaintiffs *except* for Reardon, plaintiffs allege that their remedies are not limited to those available in the warranties because the warranties are unconscionable and fail of their essential purpose, and are therefore void.[4] AC ¶¶ 175–77; 219–21; 268–70; 300–02; 332–34; 362–64. Carrier, in turn, argues that the warranties are valid and enforceable and contest plaintiffs' arguments that the warranties are unconscionable and fail of their essential purpose. MTD at 14.

---

[4] Because Reardon does not allege that her warranty was unconscionable or fails of its essential purpose, the Court does not address Arizona law in this subsection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

### i.    Unconscionability

Carrier argues that plaintiffs fail to allege facts that render Carrier's warranty unconscionable because plaintiffs do not allege that the warranty is both substantively *and* procedurally unconscionable.  Id. at 15.  Carrier contends that the warranties, including their limitations, are not substantively unconscionable because they do not create an "overly harsh or one-sided result[] that shock[s] the conscience."  Id. (quoting Berenblat v. Apple, Inc., Nos. 08-cv-4969 JF-PVT, 09-cv-1649-JF-PVT, 2010 WL 1460297, *5 (N.D. Cal. Apr. 9, 2010).  In addition, Carrier asserts that the limited warranties are not procedurally problematic because (a) plaintiffs do not allege they were subject to undue pressure or that the terms were a surprise; (b) any disparity in bargaining power is not sufficient to render the warranty procedurally unconscionable; and (c) plaintiffs cannot plausibly allege there were no alternative air conditioner manufacturers.  MTD at 16.

Plaintiffs argue that the warranty is unconscionable because Carrier knowingly distributed defective HVAC systems without disclosing the defect and at the same time provided a take-it-or-leave-it warranty that does not cover the full costs of repair.  Opp'n at 9.  Plaintiffs assert that other courts have found that other plaintiffs adequately alleged unconscionability in virtually identical circumstances.  Id. at 10.  Courts reached the contrary conclusion only where the plaintiffs either failed to allege defendants' pre-sale knowledge of the defect or the defect arose because of environmental variables.  Id. at 10–11.  Lastly, plaintiffs argue that the existence of alternative air conditioning manufacturers is not, alone, dispositive of unconscionability.  Id. at 11–12.

Unconscionability generally "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."  Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 690 (2000) (quotation marks omitted).  In California, Georgia, Florida, and Maryland, both types of unconscionability must be present in order for a court to refuse to enforce a contract.  See id.; NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771–72 (Ga. 1996) (recognizing that unconscionability generally has a procedural and substantive aspect); Losapio v. Comcast Corp., No. 1:10-cv-3438-RWS, 2011 WL 1497652, at *6 (N.D. Ga. Apr. 19, 2011) ("For a contract to be unconscionable under Georgia law, there must generally be both procedural and substantive unconscionability." (citing NEC Techs. , 478 S.E.2d at 773 n.6); Licul v. Volkswagen Grp. of Am., Inc., No. 13-cv-61686,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

2013 WL 6328734, at *3 (S.D. Fla. Dec. 5, 2013) (applying Florida law and asserting that "[a] contract or clause is unconscionable when it is both procedurally and substantively unconscionable"); Freedman v. Comcast Corp., 190 Md. App. 179, 207–08 (2010) ("The prevailing view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable. . . . Although this precise statement has only been made by a dissenting minority of the Court of Appeals, we believe that it accurately reflects Maryland Law[.]"); Cicle v. Chase Bank USA, 583 F.3d 549, 554 (8th Cir. 2009) ("Before a contract will be deemed unenforceable on the grounds of unconscionability, a court applying Missouri law must find it both procedurally and substantively unconscionable."). By contrast, "[u]nder Indiana law, a contract may be substantively unconscionable, procedurally unconscionable, or both." Jackson v. Bank of Am. Corp., 711 F.3d 788, 792 (7th Cir. 2013).

For a contract to be substantively unconscionable, the results must be so harsh as to "shock the conscience." Aron v. U-Haul Co. of California, 143 Cal. App. 4th 796, 808 (2006) (quotation marks omitted); see also Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 284–85 (Fla. Dist. Ct. App. 2003) ("To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so outrageously unfair as to shock the judicial conscience." (quotation marks omitted)); Johnson v. Wells Fargo Bank, N.A., No. 1:14-cv-02988-LMM, 2015 WL 12591792, at *3 (N.D. Ga. June 17, 2015) ("Georgia law sets a high bar for finding unconscionability. As the Georgia Supreme Court has explained, '[a]n unconscionable contract is such an agreement as no sane man not acting under a delusion would make, and that no honest man would take advantage of.' Similarly stated, [u]nconscionable conduct must shock the conscience." (citation and quotation marks omitted)); Shih Ping Li v. Tzu Lee, 62 A.3d 212, 235 (Md. Ct. Spec. App. 2013), ("[U]nconscionability can be classified as . . . 'substantive' when the terms are so one-sided as to 'shock the conscience' of the court.") aff'd, 85 A.3d 144 (Md. 2014); cf. Jackson, 711 F.3d at 792 ("In Indiana, an unconscionable contract is one that no sensible man not under delusion, duress or in distress would make, and [that] no honest and fair man would accept." (quotation marks omitted); Cicle, 583 F.3d 549, 554 ("Missouri courts have described an unconscionable agreement as one in which 'no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other,' or one where there is 'an inequality so strong, gross, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'").

In the operative complaint, plaintiffs allege that their limited warranties are substantively unconscionable primarily because the warranties limit the remedies available and thus fails to make plaintiffs whole. AC ¶¶ 175, 176, 219, 220, 268, 269, 300, 301, 332, 333, 362, 363. The relevant warranties state: "if a part fails due to defect during the applicable warranty period [Carrier] will provide a new or remanufactured part, at [Carrier's] option, to replace the defective part at no charge for the part." RJN Exs. 1–7. The warranties limit available remedies: "**THIS WARRANTY DOES NOT COVER** . . . labor or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing, or handling of either failed [or defective] parts, or replacement parts, or new units." Id.

The Court concludes that plaintiffs' allegations that the warranties' remedies are limited are not sufficient to plead substantive unconscionability. The statutes governing the relevant warranties *expressly* permit a seller to limit the remedies available to the buyers. See Cal. Com. Code § 2719(1)(a) ("The agreement . . . may limit or alter the measure of damages recoverable under this division, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts"); Fla. Stat. Ann. § 672.719(1)(a); Ga. Code Ann. § 11-2-719(a)(1) (same); Ind. Code Ann. § 26-1-2-719 (same); Md. Code Ann., Com. Law § 2-719(1)(a) (same); Mo. Ann. Stat. § 400.2-719(1)(a) (same). In addition, other courts considering the same warranties determined that they were not substantively unconscionable, "because the terms in no way shock the conscience." Grassi v. Int'l Comfort Prod., LLC, No. 1:15-cv-00253-JAM, 2015 WL 4879410, at *4 (E.D. Cal. Aug. 14, 2015) (quotation marks omitted); Sumer v. Carrier Corp., No. 14-cv-04271-VC, 2015 WL 758314, at *1 (N.D. Cal. Feb. 20, 2015) ("Sumer I") (same).

Plaintiffs' allegation of procedural unconscionability relies on their contention that the "warranty is a contract of adhesion, presented solely on a take-it or leave-it basis, which [plaintiffs] have no opportunity to negotiate." AC ¶¶ 175, 219, 268, 300, 332, 362. "[B]road allegations of procedural unconscionability, stating simply that there was unequal bargaining power and there was lack of meaningful choice relating to the limitations on the warranties," are not sufficient to state a claim. Fisher v. Honda N.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Am., Inc., No. 13-cv-09285-JAK, 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014) (quotation marks omitted).

    In California, "[t]he procedural element of unconscionability focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." Aron, 143 Cal. App. 4th at 808 (citations omitted). To show oppression, California courts consider whether the complaining party had "reasonably available sources of supply from which to obtain desired goods or services free of the terms claimed to be unconscionable." Id. at 809 (quoting Dean Witter Reynolds, Inc. v. Superior Court 211 Cal. App. 3d 758, 768 (1989)). Here, plaintiffs do not allege that there were no alternative air conditioning manufacturers from which Oddo could have obtained HVAC systems. Nor do plaintiffs allege that Oddo was surprised by the terms of the warranty. As a result, the Court concludes that plaintiffs have not adequately pleaded procedural unconscionability with respect to Oddo. See Berenblat, 2010 WL 1460297, at *5 (concluding that plaintiffs failed to show a warranty is procedurally unconscionable, even where the terms of the warranty were non-negotiable, because plaintiffs did not allege they lacked other options for purchasing the relevant goods or for obtaining additional warranty protection, and because plaintiffs did not claim that they were surprised by the terms of the express warranty, which were prominent in the text).

    Florida courts apply a balancing, or sliding scale approach to unconscionability. Basulto v. Hialeah Auto., 141 So. 3d 1145, 1160 (Fla. 2014). Although "both the procedural and substantive aspects of unconscionability must be present," they need not be present "to the same degree," and "both should be evaluated interdependently rather than as independent elements." Id. at 1161. To determine procedural unconscionability under Florida law, "courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract." Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1135 (11th Cir. 2010). Here, plaintiffs do not allege that LaSala purchased his HVAC unit under duress, that he lack a meaningful choice with respect to purchasing HVAC systems, or that he did not have the ability or opportunity to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

understand the terms of the warranty.  While it appears that the terms of the warranty were presented on a "take-it-or-leave-it" basis, absent other indicia of procedural unconscionability *and* absent substantive unconscionability, the Court concludes that plaintiffs fail to adequately plead that LaSala's warranty was unconscionable under Florida's sliding scale approach to unconscionability.

Pursuant to Georgia law, "[p]rocedural unconscionability addresses the process of making the contract" and  relevant factors include "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice."  NEC Techs., 478 S.E.2d at 771–72.  With respect to procedural unconscionability, plaintiffs allege only that Lamm had no opportunity to negotiate the warranty, thereby addressing the "bargaining power" factor.   However, Georgia—like Florida—appears to take a balancing approach to unconscionability.  See NEC Techs., 478 S.E.2d at 773 n.6 ("Research supports the statement . . . that [m]ost courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability." (citation omitted)).  Therefore, absent other indicia of procedural unconscionability and absent substantive unconscionability, the Court concludes that plaintiffs fail to adequately plead that Lamm's warranty was unconscionable under Georgia law.  See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1377 (11th Cir. 2005) ("Although there is some bargaining disparity here, . . . the plaintiffs have failed to show that the [contract] and its making is so one-sided as to be unconscionable.").

Interpreting Indiana law, the Seventh Circuit has concluded that "[u]nequal bargaining power does not by itself . . . make a contract process unconscionable." Jackson, 711 F.3d at 793.  Because plaintiffs do not allege any other "irregularities in the bargaining process," id., the Court concludes that plaintiffs fail to plead that Gallagher's warranty was procedurally unconscionable.

In Maryland, "[a] contract of adhesion is not automatically deemed *per se* unconscionable."  Walther v. Sovereign Bank, 872 A.2d 735, 746 (Md. 2005).  Rather, where plaintiffs allege that a contract is one of adhesion, a court "must examine the *substance* of the particular provision at issue."  Id. at 746–47.  Because the Court has already concluded that Kimball's warranty was not substantively unconscionable, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Court concludes that allegations of a "take-it-or-leave-it" warranty are insufficient to plead unconscionability under Maryland law.

Like Florida and Georgia, "Missouri cases suggest that [procedural and substantive unconscionability] should be considered together and balanced, so that if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability and vice versa." Cicle, 583 F.3d at 554. In addition, like Indiana and Maryland, absence of bargaining power alone is not sufficient to make a contract procedurally unconscionable. See id. ("These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt. Because the bulk of contracts signed in this country are form contracts—a natural concomitant of our mass production-mass consumer society—any rule automatically invalidating adhesion contracts would be completely unworkable. The agreement at issue here is not so procedurally unconscionable as to render it unenforceable unless the agreement is grossly unconscionable in substance." (citations and quotation marks omitted)). Because the Court has already concluded that Klinge's warranty was not substantively unconscionable, the Court concludes that allegations of a "take-it-or-leave-it" warranty are insufficient to plead unconscionability under Missouri law.

The Court therefore concludes that plaintiffs have failed to plead that their warranties were unconscionable.

## ii.    Fails of Its Essential Purpose

Plaintiffs allege that Carrier's warranties fail of their essential purpose because the contractual remedies are insufficient to make them whole. AC ¶¶ 175–76; 219–20; 268–69, 300–01; 332–33; 362–63. According to Carrier, a warranty fails of its essential purpose only if repeated repair attempts are unsuccessful, and that test is not met here. Id. at 17–18. Carrier argues that plaintiffs fail to plead that the warranties fail of their essential purpose because: (1) plaintiffs fail to allege that they gave Carrier an opportunity to repair, a prerequisite to asserting a failure of essential purpose and (2) plaintiffs' TXVs were successfully unclogged following repair and plaintiffs do not aver that there was a recurring problem after repair. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Plaintiffs assert that a limited remedy fails of its essential purpose where "the circumstances existing at the time of the agreement have changed so that the enforcement of the limited remedy would essentially leave plaintiff with no remedy at all."  Opp'n at 12 (quoting S.F. Bay Area Rapid Transit v. GE Transp. Sys. Glob. Signaling LLC, No. 06-cv-03749-JSW, 2010 WL 2179769, *6 (N.D. Cal. May 27, 2010).  According to plaintiffs, injecting HVAC systems with A/C Re-New does not remove the contaminants and causes further damage, and Carrier has refused to take further action to fully remove all contaminants.  Id. at 12–13.  Therefore, plaintiffs contend that they have alleged facts sufficient to plead that the limited warranty fails of its essential purpose.  Id. at 13.

Under the relevant state laws, a limited "repair or replace" warranty fails of its essential purpose when a warrantor fails to successfully repair defects within a reasonable time.  See Sumer, 2015 WL 758314, at *1 ("[U]nder California law, a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time."); Richter v. Monaco Coach Corp., No. 5:08-cv-207-WTH-DAB, 2009 WL 1537894, at *4 (M.D. Fla. June 2, 2009) (interpreting Florida law, "[a] repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts."); Helpling v. Rheem Mfg. Co., No. 1:15-cv-2247-WSD, 2016 WL 1222264, at *7 (N.D. Ga. Mar. 23, 2016) ("The case law . . . tends to allow breach of warranty claims to proceed only where a plaintiff establishes that a warrantor is unable to remedy an alleged defect after multiple attempts to remedy, or where a warrantor refuses to comply with the terms of the limited warranty."); Swan Lake Holdings, LLC v. Yamaha Golf Cart Co., No. 3:09-cv-228-PPS, 2010 WL 3894576, at *7 (N.D. Ind. Sept. 27, 2010) ("Indiana courts find that an exclusive remedy of repair or replacement . . . has failed of its essential purpose where attempted repairs fail to correct the problem."); Baney Corp. v. Agilysys NV, LLC, 773 F. Supp. 2d 593, 605 (D. Md. 2011) ("[A] repair remedy fails of its essential purpose when the seller has refused to make repairs as he was required or where he cannot repair the product." (quotation marks omitted)); Williams v. United Techs. Corp., No. 2:15-cv-04144-NKL, 2015 WL 7738370, at *5 (W.D. Mo. Nov. 30, 2015) ("A repair and replace warranty fails its essential purpose when the warrantor because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition." (quotation marks omitted)).

In similar circumstances, courts have concluded that plaintiffs failed to adequately plead that warranties failed their essential purposes where the plaintiffs did not allege that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

their HVAC units failed to provide cooling after defendants took steps to repair or replace the systems. See Helpling, 2016 WL 1222264, at *8 ("[T]he Complaint fails to allege that their [HVAC] Units continued to have any problems after they applied A/C Renew. Where the warranty's remedy—that is, repairing or replacing the defective parts—can fix the alleged defect, the warranty does not fail in its essential purpose." (citation omitted)); Justice v. Rheem Manufacturing Co., No. 9:14-cv-80017-WPD, slip op. at 8 (S.D. Fla. Aug. 22, 2014 ) (Dkt. No. 47) ("According to the allegations, Rheem is able to repair or replace components of Rheem ACs in order to render the units functional and capable of providing cooling. . . . These allegations exhibit a functioning warranty that led to repairs, rather than a warranty that failed to provide Plaintiffs with meaningful recourse whenever their Rheem ACs ceased cooling. Thus, the essential purpose doctrine does not render the warranty void."); Sumer, 2015 WL 758314, at *1 ("Here, when the coil failed during the warranty period, Carrier replaced the coil at no charge to Sumer. This replacement coil functioned for nearly five years."); Grassi, 2015 WL 4879410, at *4 (finding plaintiff's "essential purpose" argument "unpersuasive" because plaintiff's allegations established that defendant repaired the HVAC unit by replacing the failed part with a functioning part). In the instant case, plaintiffs do not allege that the repairs on their HVAC systems failed to render their units workable. Moreover, plaintiffs' allegations with respect to the *potential* damage caused by A/C Re-New are speculative and do not establish that the repairs were unsuccessful. See AC ¶ 25 ("The long-term effects of this so-called fix are, at best, unknown."). Accordingly, the Court finds that plaintiffs have failed to adequately allege that the warranties fail of their essential purpose.

### iii.    Summary

Because the Court finds that plaintiffs have failed to adequately allege that the warranties are unconscionable or fail of their essential purpose, the Court concludes that plaintiffs have failed to adequately plead that the warranties are invalid or unenforceable.

### c.    Carrier's Compliance with its Obligations under Express Warranties

Carrier argues that it complied with its warranty obligations by providing replacement parts that restored cooling (new TXVs and a de-clogging additive), and exceeded their obligation by providing a labor allowance, even though the warranty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|----------|------------------------|------|------------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

excludes labor costs.  MTD at 10–11.  The relevant warranties state: "if a part fails due to defect during the applicable warranty period [Carrier] will provide a new or remanufactured part, at [Carrier's] option, to replace the defective part at no charge for the part."  RJN Exs. 1–7.  In addition, the warranties state: "**THIS WARRANTY DOES NOT COVER** . . . labor or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing, or handling of either failed [or defective parts, or replacement parts, or new units."  Id.  Carrier addresses three of plaintiffs' arguments. First, Carrier contends that plaintiffs' allegations that their HVAC units do not provide the desired energy efficiency does not state a claim for breach of warranty because the warranties exclude from coverage "electricity or fuel costs, or increases in electricity or fuel costs from any reason whatsoever."  MTD at 12 (quoting RJN Exs. 1–7).  Second, Carrier argues that Oddo, Reardon, and Kimball's alleged payment for the injection of A/C Re-New and labor costs are not attributable to defendants because bulletins authorized TXV replacement and the additive injection at no charge and Carrier provided labor credits.  MTD at 12.  According to Carrier, that plaintiffs incurred costs relating to replacement demonstrates that they did not follow the process for submitting a warranty claim.  Id.  In addition, Carrier argues that labor costs are expressly excluded under the warranty.  Id.  Third, Carrier asserts that the allegations of "unknown" future effects of the additive, AC ¶ 25, do not state a claim for breach of warranty because the potential for harm is too vague and speculative.  MTD at 13.

In response, plaintiffs argue that the A/C Re-New injections did not satisfy Carrier's obligations under the warranties because the repairs addressed the symptoms of the defect, not the underlying defect, and because the injections cause additional hidden damage.  Opp'n at 13.  Because the alleged defect in this case "infects the entire HVAC system," plaintiffs appear to argue that simply replacing a part does not satisfy Carrier's obligations; instead, plaintiffs argue that Carrier's failure to provide plaintiffs with HVAC systems free from defects violates the warranties.  Id. at 14.  Plaintiffs contend that, notwithstanding bulletins authorizing free parts and labor credits, Oddo, Reardon, and Kimball *actually* incurred out-of-pocket costs.  Id. at 16.  And plaintiffs argue that the operative complaint includes detailed allegations about the detrimental effects of A/C Re-New, showing that the additive is "substantially certain to manifest in a future malfunction" and that it "causes immediate damage and further devalues the already-defective systems."  Id. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Absent a "failure due to defect" of the HVAC systems or a "part fail[ure]," see RJN Exs. 1–7, the warranties do not require Carrier to provide repairs. After plaintiffs were provided with TXV replacements and injections of A/C Re-New, plaintiffs do not allege any further failure or malfunction of their HVAC units. As a result, the Court concludes that plaintiffs have failed to plead that the repairs provided, including the injection of A/C Re-New, did not satisfy Carrier's obligations under the warranties.

The possibility that A/C Re-New might cause a later malfunction is not enough to allege a breach of the warranties. In Helpling v. Rheem Manufacturing Company, 2016 WL 1222264, the U.S. District Court for the Northern District of Georgia concluded that allegations of the potentially harmful effects of A/C Re-New "do not sufficiently show that Rheem breached its limited warranty, because the Complaint does not allege that [plaintiff's] Rheem Units continue to malfunction." Id. at *7. Plaintiffs argue that their allegations are distinct from those in Helpling because plaintiffs' allegations with respect to A/C Re-New are more specific and because plaintiffs allege immediate harm, not just future harm. Opp'n at 14. While it is true that plaintiffs in this case provide greater specificity with respect to the potential for A/C Re-New to cause harm, such specificity does not overcome the flaw that their claims share with the Helpling plaintiffs: here, too, plaintiffs fail to allege that their HVAC units continued to malfunction after the injection of A/C Re-New. In addition, plaintiffs allege only the possibility of future harm arising from the injection of A/C Re-New—not current failures of their units. See AC ¶ 25 ("The long-term effects of this so-called fix are, at best, *unknown*. . . . A/C Re-New changes . . . the viscosity of the oil [which] . . . *may* cause additional wear and tear on the compressor and other components. Likewise, changes to the thermodynamic properties of the refrigerant from the original tar and addition of A/C Re-New *can* cause premature failure of equipment and loss of energy efficiency. Thus, the injection of A/C Re-New itself *may* shorten the lifespan of the equipment or cause other issues in the future, after the warranty has expired, while the original contamination still remains in the system. Contractors have acknowledged the *potential* harmful effects of A/C Re-New because it is highly acidic, and *could* cause damage to coils and premature system failure." (emphases added)).

The Court further concludes that plaintiffs have failed to plead that Carrier did not satisfy its obligations under the warranties with respect to Oddo, Kimball, and Reardon's out-of-pocket costs. Oddo and Kimball are not entitled to recover costs on the basis of the warranties because Oddo and Kimball failed to afford Carrier with a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

opportunity to cure. <u>See</u> <u>supra</u> Part IV.A.1.a. With respect to Reardon, plaintiffs allege that he incurred costs for a diagnostic visit and labor costs. AC ¶ 40. The warranties expressly state that they "DO[] NOT COVER: Labor or other costs incurred for *diagnosing*, repairing, removing, installing, shipping, servicing, or handling of either failed parts or replacement parts, or new units." <u>See</u> RJNs Exs. 1–7 (emphasis added). Such limitations are permissible. <u>See</u> <u>supra</u> Part IV.A.1.b.i.

Accordingly, the Court concludes that plaintiffs have failed to plead that Carrier did not comply with its obligations under the express warranties.

### d.    Plaintiffs Cannot Alter or Expand Express Warranty

Carrier argues that plaintiffs may not avoid Carrier's limited warranties by relying on advertisements and marketing materials to expand the warranty because: (a) five of the seven plaintiffs have not referred to or provided the content of any advertising or marketing materials on which they claim to have relied; (b) the warranty makes clear that it is exclusive and disclaimed any alteration by any distributor, dealer, or other person; (c) the advertising statements that Oddo and Lamm point to are general opinions about the quality and value of Carrier's products, which are not actionable and do not create an express warranty; and (d) the SEER ratings associated with plaintiffs' units cannot serve as warranties because the express warranty is exclusive, plaintiffs do not allege that their systems failed to perform in accordance with their SEER ratings, and the Energy Policy and Conservation Act preempts a warranty claim premised on representations about a unit's SEER, 42 U.S.C. § 6297(g).[5] MTD at 19–22. Plaintiffs do not respond to these arguments in their opposition. The Court concludes that plaintiffs may not rely on marketing statements to expand the scope of the express warranties, which state that they are exclusive. <u>See</u> <u>Williams</u>, 2015 WL 7738370, at *6 (concluding that a provision that made expressed warranties exclusive "validly disclaimed any warranties which could have been created by the generic marketing statements").

---

[5] In their opposition, plaintiffs assert that only one plaintiff, Oddo, alleges that the SEER ratings formed part of the express warranty and plaintiffs withdraw this portion of Oddo's warranty claim. Opp'n at 15 n.18. As a result, the Court does not address the question of whether SEER ratings may serve as warranties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

### e.     Summary

With respect to plaintiff's breach of express warranty claims, the Court **GRANTS** Carrier's motion to dismiss Oddo, LaSala, Kimball, and Klinge's claims for express breach of warranty and **DISMISSES** those claims without prejudice because Oddo, LaSala, Kimball, and Klinge did not afford Carrier with a reasonable opportunity to cure the defects.  Furthermore, the Court has found that plaintiffs fail to plead adequately that: (1) Carrier's warranties are invalid and unenforceable because they are unconscionable and fail of their essential purpose; and (2) Carrier did not comply with its obligations under the express warranties.  The Court therefore concludes that plaintiffs have failed to state claims for breach of their express warranties.  Accordingly, the Court **GRANTS Carrier's motion to dismiss the following claims: 1 (to the extent plaintiffs plead breach of *express* warranty), 4, 9, 14, 18, 21, 24, and 27**, and **DISMISSES** those claims **without prejudice**.

### 2.     Implied Warranty Claims

A "breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406 (2003); see also Ram Head Outfitters, Ltd. v. Mecham, No. 09-cv-1382-PHX-MHM, 2011 WL 1429623, at *7 (D. Ariz. Apr. 14, 2011); Jovine v. Abbott Labs., 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011); Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC, 845 F. Supp. 2d 1342, 1356 (N.D. Ga. 2011); U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co., 719 F. Supp. 2d 1020, 1026 (S.D. Ind. 2010); Bailey v. Atlantic Automotive Corp., 992 F. Supp. 2d 560, 574 (D. Md. 2014); Williams, 2015 WL 7738370, at *6.

In the instant motion, Carrier contends that plaintiffs' implied breach of warranty claims fail for four reasons: (1) plaintiffs do not allege that their HVAC systems were not restored to working condition; (2) plaintiffs' allegation that the A/C Re-New will have an unknown know effect is too speculative to establish a breach of implied warranty; (3) Carrier satisfied its obligations under the express warranties, and therefore also fulfilled its obligations under the implied warranties; and (4) Reardon, LaSala, and Lamm's implied warranty claims fail because they do not allege they were in privity with the manufacturers and Arizona, Florida, and Georgia require privity of contract for such claims.  MTD at 22–24.  Plaintiffs argue, in turn, that there was a breach of the implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

warranties because "[t]he systems were all unfit for ordinary use at the time of sale." Opp'n at 16.  Plaintiffs further assert that because all plaintiffs except Reardon injected A/C Re-New into their HVAC unit, "all but Reardon's systems continue to contain an undisclosed, latent defect."  Id.

Plaintiffs' arguments are unavailing.  "[I]t is the defect itself, rather than some theoretical imperfection, that must exist during the warranty period, and that defect must be so severe as to cause the product to fall below the 'minimum level of quality' guaranteed by the warranty."  Grassi, 2015 WL 4879410, at *5 (quoting Parenteau v. Gen. Motors, LLC, No. 14-cv-4961-RGK-MAN, 2015 WL 1020499, at *11 (C.D. Cal. Mar. 5, 2015)).  Plaintiffs do not allege in the operative complaint that the injection of the A/C Re-New into their systems has resulted in any current defect in their HVAC systems.  See Helpling, 2016 WL 1222264, at *8 n.7 (dismissing a complaint when it "only vaguely suggests—without alleging—that the use of A/C Renew may cause long-term damage").  In fact, as described above, plaintiffs do not allege at all that their units are currently not operational.  The Court therefore concludes that plaintiffs have failed to allege a fundamental defect that renders their HVAC systems unfit for their ordinary purpose.  See Grassi, 2015 WL 4879410, at *5 (dismissing breach of implied warranty claim "because the [complaint] establishes that Defendant complied with the implied warranty" by "fix[ing] the problem"); Sumer I, 2015 WL 758314, at *1 ("[A]s with [plaintiff's] express warranty claims, the implied warranty claim fails on the merits because when the first coil failed during the one-year implied warranty period, [defendant] replaced the leaking coil at no cost to [plaintiff]."); Williams, 2015 WL 7738370, at *7 (dismissing breach of implied warranty claim even though the product "functioned for a far shorter period of time than expected" because defendants repaired and replaced the necessary components and the product was operational for a time afterwards)).  Accordingly, plaintiffs have failed to state claims for breach of their implied warranties.  The Court notes that plaintiffs "do not dispute that Reardon's Arizona implied warranty claim, Ariz. Rev. Stat. § 47-2314, may be dismissed due to lack of privity."  Opp'n at 18 n.21.

The Court therefore **GRANTS** Carrier's motion to dismiss the following claims: 1 (to the extent plaintiffs plead breach of *implied* warranty), 10, 12, 15, 19, 22, 25, and 28. The Court **DISMISSES claims 1, 10, 15, 19, 22, 25, and 28 without prejudice**. However, the Court **DISMISSES claim 12 *with* prejudice** because plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

acknowledge that Reardon lacks privity and may not bring an implied warranty claim under Arizona law.

### B.    Plaintiffs' Fraud-Based Claims

Plaintiffs assert eleven claims against Carrier arising from their allegedly fraudulent conduct: negligent misrepresentation (claim 2); fraudulent concealment (claim 5); and violations of seven States' consumer protection and/or unfair trade practices laws premised on misrepresentations and omissions (claims 6, 7, 8, 11, 13, 16, 17, 20, 23, 26).

Carrier contends that plaintiff's fraud-based claims fail on several grounds: (1) plaintiffs fail to identify actionable misrepresentations or false statements; (2) plaintiffs fail to plead reliance on any statement or omission, and therefore fail to plead causation; (3) plaintiffs cannot plead fraudulent omissions in light of Carrier's disclosures in a series of bulletins; and (4) several of the plaintiffs' claims are barred under the economic loss doctrine.  MTD at 25–31.

### 1.    Misrepresentations

Because plaintiffs' misrepresentation claims sound in fraud, plaintiffs must comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting a claim for fraud be pled with particularity. Fed. R. Civ. P. 9(b).  "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  [W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule."  Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in original).  To satisfy Rule 9(b), a plaintiff must "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false."  Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

Plaintiffs argue that each plaintiff alleges that he or she reviewed statements concerning SEER efficiency made by Carrier on its website, in marketing brochures,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

and/or materials provided with the HVAC systems.  Opp'n at 29 (pointing to AC ¶¶ 36, 39, 41, 43, 45, 47).  Specifically, plaintiffs allege that:

- Oddo reviewed Arcoaire's website, which states that its HVAC systems are "BUILT TO LAST," and Arcoaire's materials advertising the system as "high efficiency" and "capable of up to a 16 Seasonal Energy Efficiency Ratio[.]" AC ¶ 36.
- Reardon received product information that indicated that her systems were "capable of up to 16 SEER."  Id. ¶ 39.
- LaSala received product information that indicated that his system was "capable of up to 15 SEER."  Id. ¶ 41.
- Lamm reviewed Bryant's website, which states that its consumers will "enjoy reliable whole-home comfort" and that its air conditioners are "designed to operate consistently and quietly with SEER ratings of 15 or higher."  Id. ¶ 43.
- Kimball reviewed Bryant brochures, which advertised the system he purchased as "being capable of up to 22 SEER."  Id. ¶ 45.
- Klinge's system was advertised and described in the product specifications booklet "as being capable of 13 SEER."  Id. ¶ 47.
- Gallagher's system was advertised as being capable of up to 16 SEER but, at installation, it was specified as 13 SEER because he lacked certain equipment. Id. ¶ 49.

The Court first finds that the website advertisements on which Oddo and Lamm allegedly relied cannot be the basis for claims of fraudulent misrepresentation because such statements are puffery and are, therefore, not actionable as a basis for claims of fraud or misrepresentation.  See Grassi, 2015 WL 4879410, at *6 (statements that the "HVAC units were 'manufactured to some of the industry's toughest standards and are covered by some of the best warranties in the industry[]' . . . are indeed puffery"); Tomek v. Apple, Inc., No. 2:11-cv-02700-MCE, 2013 WL 3872774, at *5 (E.D. Cal. July 25, 2013) (statements characterizing a computer as a "huge leap[ ] in performance" that makes it "so your work just goes smoother and faster," are "[g]eneralized, vague, and unspecified assertions [that] constitute 'mere puffery' upon which a reasonable consumer could not rely" (citations and quotation marks omitted)) aff'd, 636 F. App'x 712 (9th Cir. 2016); Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1028–29 (11th Cir. 2003) (finding that fraud and negligent misrepresentation claims failed because the defendant's characterization of a corporation's performance as "strong" constituted "mere puffery"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

under Georgia law). In addition, the Court finds that plaintiffs do not allege in the AC that their HVAC systems cannot function to the advertised level of efficiency. Rather, plaintiffs alleged that "it is *substantially likely* that almost all of the impacted HVAC systems are not functioning *as efficiently* as they would have functioned absent impurities in the manufacturing process." AC ¶ 29 (emphases added). Because plaintiffs do not allege that their systems failed to function at the SEER ratings indicated for their respective units, the Court cannot conclude that Carrier misrepresented the capabilities of the HVAC systems. Therefore, the Court **GRANTS** Carrier's motion to dismiss plaintiffs' claims based on misrepresentations. The Court **DISMISSES without prejudice claims 2, 5, 6, 7, 8, 11, 13, 16, 17, 20, 23, 26** *to the extent such claims rely on alleged misrepresentations*.

### 2. Omissions

#### a. Whether Rule 9(b) is Satisfied

Plaintiffs allege that they would not have purchased their HVAC units had the advertising, marketing materials, and or product information disclosed the existence of a manufacturing defect, which was material. AC ¶¶ 36, 39, 41, 43, 45, 47, 49, 110, 111. As a result of the alleged failure to disclose the defect, plaintiffs raise several claims based on fraudulent omission and/or concealment. See id. ¶¶ 128–37; 141(d), 145–46, 153–55, 160–61, 166, 194, 207, 253, 255, 290, 318–19, 323, 349, 353. Carrier argues that plaintiffs' allegations of reliance on the omission are boilerplate and insufficient as a matter of law. MTD at 28. Carrier also contends that plaintiffs fail to sufficiently allege the circumstances surrounding their review of any product information. Id. at 29.

When a claim rests on a fraudulent omission, the Rule 9(b) standard is somewhat relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." Huntair, Inc. v. Gladstone, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011) (quotation marks omitted). Nonetheless, a plaintiff alleging a fraudulent omission or concealment must plead the claim with particularity. See Bias v. Wells Fargo & Co., F. Supp. 2d, 2013 WL 1787158, *12 (N.D. Cal. Apr. 25, 2013) ("Although Plaintiffs' allegations do allege a fraud based in part on omissions, a plaintiff must still plead such claim with particularity."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b).").  Courts disagree as to what exactly a plaintiff alleging a fraudulent omission must plead in order to satisfy Rule 9(b).  For example, this Court has stated that, to plead the circumstances of omission with specificity, a plaintiff must:

> describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

Gomez v. Carmax Auto Superstores California, LLC, No. 2:14-cv-09019-CAS-PL, 2015 WL 350219, at *6 (C.D. Cal. Jan. 22, 2015) (quoting Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)); see also Parenteau, 2015 WL 1020499, at *7 (dismissing omission claims where plaintiff did "not allege any contact with Defendant (as distinct from the dealer) prior to purchasing her vehicle where omissions regarding the defect at issue should or could have been revealed," and did not "allege with any degree of specificity which advertisements, offers, or other representations she relied on that failed to include the omitted information").  However, other courts have concluded that a plaintiff's allegation of a "'wholesale nondisclosure' of a material defect" is sufficient unless the defendant demonstrates that there was "a document or communication that [the plaintiff] should have reviewed before purchase[.]"  See Herremans v. BMW of N. Am., LLC, No. 14-cv-02363-MMM-PJW, 2014 WL 5017843, at *19 (C.D. Cal. Oct. 3, 2014); Doyle v. Chrysler Grp. LLC, No. 13-cv-00620-JVS, 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014) (concluding it would be "nonsensical" to "require Plaintiffs to prove they reviewed every [relevant] communication" including "press releases, continually updated web pages, countless mailings, and advertisements in a variety of media").

Plaintiffs allege that: (1) Oddo, prior to his purchase, "extensively reviewed Arcoaire's website and marking materials provided by his Arcoaire distributor"; (2) Reardon *received* product information from her home builder which indicated . . . that Reardon's systems was [sic] capable of up to 16 SEER"; (3) LaSala "*received* product information with [his] new system"; (4) Lamm, prior to purchase, "reviewed Bryant's website, as well as information from her installer which provided efficiency and capacity information"; (5) Kimball, prior to purchase, "reviewed Bryant brochures that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

received from his installer and reviewed Bryant's website"; (6) Klinge, prior to purchase, "reviewed Comfortmaker's product efficiency and capacity information"; and (7) Gallagher "reviewed Bryant's website and marketing materials."  AC ¶¶ 36, 39, 41, 43, 45, 47, 49 (emphases added).

The Court concludes that plaintiffs sufficiently plead the circumstances of omission with respect to Oddo, Lamm, Kimball, Klinge, and Gallagher to satisfy the more stringent standard set forth in <u>Marolda</u> and <u>Parenteau</u>.  These plaintiffs also sufficiently allege reliance on an allegedly material misrepresentation.[6]  The Court therefore **DENIES Carrier's motion to dismiss Oddo, Lamm, Kimball, Klinge, and Gallagher's claims based on fraudulent omission or concealment—to the extent Carrier contests the specificity of plaintiffs' pleadings**.  However, plaintiffs do *not* allege that Reardon or LaSala actually reviewed the product information on their HVAC systems, notwithstanding the fact that plaintiffs themselves identify the materials that Reardon and LaSala should have read.  Therefore, Reardon and LaSala do not satisfy even the more liberal standard applied in <u>Herremans</u>.  Accordingly, Reardon and LaSala fail to allege fraudulent omission and concealment with sufficient specificity to satisfy Rule 9(b).  The Court therefore **GRANTS Carrier's motion to dismiss Reardon and LaSala's claims based on fraudulent omission and concealment** and **DISMISSES without prejudice claims 2, 5, 11, and 13 in relation to Reardon and LaSala *to the extent such claims rely on alleged omissions***.

### b.   Whether Carrier Disclosed the Alleged Defect

Carrier also argues that plaintiffs' omissions claims fail because Carrier actually disclosed that some of its HVAC units might experience a TXV clog through its Dealer Service Bulletins ("DSBs").  MTD at 30.  Plaintiffs contend that they were not aware of the DSBs, which were "issued as early as 2014," AC ¶ 16, because the bulletins were not made available to consumers.  Opp'n at 20.  Plaintiffs therefore contend that the DSBs do not constitute disclosures.  <u>Id.</u>

---

[6] The parties dispute whether plaintiffs must allege reliance on Carrier's omission. <u>See</u> MTD at 28; Opp'n at 21–28.  Because the Court finds that plaintiffs' allege reliance with sufficient particularity, the Court need not resolve at this time whether reliance is a required element for each common law and state law claim for omission and concealment that plaintiffs plead.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

In <u>Sumer I</u>, the court dismissed plaintiff's claim that Carrier fraudulently failed to disclose to purchasers of its air conditioning units that the copper evaporator coils in those units were defective due to their susceptibility to formicary corrosion. 2015 WL 758314, at *2. The court reached this conclusion because Carrier had stated, in a brochure available to consumers, that coil corrosion was possible and particularly prevalent in high humidity regions. <u>Id.</u> After Sumer amended his complaint, the court again dismissed Sumer's fraudulent omission claim because Carrier's brochure, along with an industry report discussing the tendency of copper coils to corrode, meant that Sumer could not plausibly allege that Carrier had "exclusive knowledge" of the alleged defect. <u>Sumer v. Carrier Corp.</u>, No. 14-cv-04271-VC, 2015 WL 3630972, at *2 (N.D. Cal. June 10, 2015) ("<u>Sumer II</u>"). Plaintiffs contend that <u>Sumer I</u> and <u>Sumer II</u> are not applicable here because Carrier's DSBs were *not* made available to consumers. Opp'n at 20. Carrier, by contrast, argues that the form of disclosure is irrelevant to whether Carrier's knowledge of the TXV problem was exclusive. Reply at 21–22. Carrier further contends that the plaintiff's citation to the DSBs in their complaint demonstrates that the DSBs were in fact publicly available. <u>Id.</u> at 22.

Reardon and Kimball purchased their HVAC units before the DSBs were issued in 2014. <u>See</u> AC ¶¶ 39, 45. As a result, the DSBs cannot constitute a disclosure of the TXV problems with respect to Reardon and Kimball. In addition, drawing all inferences in favor of plaintiffs, the Court concludes that plaintiffs have adequately alleged that, even though Carrier may have known of the defect, that information was not conveyed to consumers. Therefore, **the Court DENIES Carrier's motion to dismiss plaintiffs' fraudulent omission and concealment claims to the extent Carrier seeks dismissal on the basis of disclosure.**

> **3.    The Economic Loss Doctrine and LaSala, Lamm, Kimball, and Gallagher's Common Law Negligent Misrepresentation and Fraudulent Concealment Claims**

Carrier argues that LaSala, Lamm, Kimball, and Gallagher's common law negligent misrepresentation and fraudulent concealment claims are barred by the economic loss doctrine because those plaintiffs only allege damages related to the HVAC products they purchased. MTD at 31. Florida, Georgia, Maryland, and Indiana—where these four plaintiffs reside—follow the economic loss doctrine. <u>See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.</u>, 110 So. 3d 399, 401 (Fla. 2013) ("[T]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."); Hanover Ins. Co. v. Hermosa Const. Grp., LLC, 57 F. Supp. 3d 1389, 1395 (N.D. Ga. 2014) ("The economic loss rule provides that a plaintiff may not recover in tort for purely economic damages arising from a breach of contract." (citing Gen. Elec. Co. v. Lowe's Home Centers, Inc., 608 S.E.2d 636, 637 (Ga. 2005))); Morris v. Osmose Wood Preserving, 667 A.2d 624, 630 (Md. 1995) ("[T]he economic loss rule . . . prohibits a plaintiff from recovering in tort for purely economic losses—losses that involve neither a clear danger of physical injury or death, nor damage to property other than the product itself."); JMB Mfg., Inc. v. Child Craft, LLC, 799 F.3d 780, 785 (7th Cir. 2015) ("Indiana courts apply the economic loss rule to preclude recovery in tort for purely economic loss—pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service provided by the defendant)." (quotation marks omitted)).

Plaintiffs concede that Kimball and Gallagher's negligent misrepresentation and fraudulent omissions claims may be dismissed under the economic loss doctrines of Maryland and Indiana. Opp'n at 30. The Court therefore **DISMISSES with prejudice claims 2 and 5 with respect to Kimball and Gallagher**. Plaintiffs do not address LaSala's common law negligent misrepresentation and fraudulent omissions claims, which arise under Florida law. However, it appears that the same logic applies equally to LaSala's claim. The Court therefore **DISMISSES without prejudice claims 2 and 5 with respect to LaSala** for the additional reason that they are barred by the economic loss doctrine.

Plaintiffs argue that Lamm's common law negligent misrepresentation and fraudulent omissions claims should not be dismissed under Georgia law because there is a "misrepresentation exception" to the economic loss rule in Georgia. Opp'n at 30. Plaintiffs are correct that Georgia recognizes a "misrepresentation exception" to the economic loss rule. See Home Depot U.S.A., Inc. v. Wabash Nat. Corp., 724 S.E.2d 53, 59 (Ga. 2012). The misrepresentation exception entails: "(1) the negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Squish La Fish, Inc. v. Thomco Specialty Prod., Inc., 149 F.3d 1288, 1291 (11th Cir. 1998) (citing Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997)). Because plaintiffs have not alleged that Carrier

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

presented Lamm with false information, the Court concludes that the misrepresentation exception does not apply.  Therefore, Georgia's economic loss doctrine bars Lamm's common law negligent misrepresentation and fraudulent omissions claims.  The Court therefore **DISMISSES without prejudice claims 2 and 5 with respect to Lamm** because they are barred by the economic loss doctrine.

Plaintiffs argue that Arizona's economic loss doctrine does not bar Reardon's common law misrepresentation and fraudulent omissions claims because the economic loss doctrine is in flux in Arizona.  Opp'n at 30.  Plaintiff's point to one district court that declined to extend Arizona economic loss rule to a negligent misrepresentation claim.  See Homeland Ins. Co. of N.Y. v. Sw. Real Estate Purchasing Grp. Inc., No. 12-cv-00856-PHX-FJM, 2012 WL 6050616, at *4 (D. Ariz. Dec. 5, 2012)  ("The extension of the [economic loss rule] to negligent misrepresentation would go beyond the rule's purpose and essentially eliminate the tort of negligent misrepresentation.").  Carrier, in turn, points to an Arizona court of appeals that expressly "reject[ed]" the argument that the economic loss doctrine does not apply to fraud and misrepresentation claims because "[t]he Arizona Supreme Court held . . . that a contracting party is limited wholly to its contractual remedies for purely economic loss related to the subject of the parties' contract."  Cook v. Orkin Exterminating Co., 258 P.3d 149, 153 n.6 (Ariz. Ct. App. 2011).  At least one district court has found the rule articulated in Cook to be "overly broad."  Jes Solar Co. v. Matinee Energy, Inc., No. 12-cv-626-TUC-DCB, 2015 WL 10943562, at *3 (D. Ariz. Nov. 2, 2015).  While there appears to be some disagreement among courts in Arizona, ultimately this Court is bound by the Ninth Circuit's conclusion that, "[a]lthough Arizona has yet to decide this issue, . . . negligent misrepresentation . . . would not be excepted from the 'economic loss' rule by the Arizona Supreme Court."  Apollo Grp., Inc. v. Avnet, Inc., 58 F.3d 477, 480 (9th Cir. 1995); see also Int'l Franchise Sols. LLC v. BizCard Xpress LLC, No. 13-cv-0086-PHX-DGC, 2013 WL 2152549, at *3 (D. Ariz. May 16, 2013) (applying the economic loss rule to bar tort claims alleging negligence and negligent misrepresentation); Maricopa Cty. v. Office Depot, Inc., No. 2:14-cv-1372-HRH, 2014 WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) ("[P]laintiff's common law fraud claims . . . are barred by the economic loss rule.").  Accordingly, the Court concludes that Arizona's economic loss doctrine bars Reardon's common law negligent misrepresentation and fraudulent omissions claims.  The Court therefore **DISMISSES without prejudice claims 2 and 5 with respect to Reardon** for the additional reason that they are barred by the economic loss doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

### C.    Plaintiffs' Unfair Trade Practices Claims

The parties dispute whether plaintiff has adequately alleged unfair trade practice claims that are distinct from plaintiffs' omission and fraud based claims.  According to Carrier, plaintiffs allege that Carrier engaged in unfair trade practices because Carrier continued to sell air conditioners after learning that some of its units were experiencing clogged TXVs.  MTD at 32.  Carrier argues that such claims fail as a matter of law because Carrier was not required to recall or retrofit all units that could have been affected by the TXV issue.  Id.  Plaintiffs argue that they do not allege a "failure to retrofit or recall."  Opp'n at 30.  Rather, plaintiffs contend that Carrier sold defective HVAC systems with a warranty that was insufficient to cover repairs and imposed "repairs" that caused further damage.  Id. at 30–31.  That Carrier knowingly engaged in such conduct was—according to plaintiffs—immoral, unethical and unscrupulous, and constituted an unfair trade practice under the relevant state laws.  Id. at 32–33.

The Court has already found that: (1) plaintiffs have failed to allege that their HVAC units continued to malfunction *after* repairs were instituted; (2) plaintiffs have failed to allege that Carrier's warranties are unconscionable and failed of their essential purpose; and (3) plaintiffs' allegations with respect to the potential damage caused by the injection of A/C Re-New are speculative and do not establish that the repairs were unsuccessful.  Therefore, the Court concludes that plaintiffs may not maintain unfair trade practices claims based on allegations that Carrier sold defective HVAC systems with an insufficient warranty and imposed "repairs" that caused further damage. Accordingly, the Court **GRANTS Carrier's motion to dismiss claims 6, 8, 11, 13, 16, 17, 20, 23 and 26 *to the extent these claims are based on such allegations*.**  Such claims are hereby **DISMISSED without prejudice**.

### D.    Plaintiffs' Unjust Enrichment Claims

Carrier argues that plaintiffs' claims for unjust enrichment fail as a matter of law because: (1) California and Georgia do not treat unjust enrichment as an independent claim; and (2) even in states that *do* recognize unjust enrichment claims, such claims are precluded by warranty claims.  MTD at 34–35.

Under Arizona, Florida, Georgia, Indiana, Maryland, and Missouri law, a plaintiff may not recover under an unjust enrichment theory where a warranty covers the subject matter in dispute.  See Trustmark Ins. Co. v. Bank One, Arizona, NA, 48 P.3d 485, 492

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|----------|----------------------|------|------------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

(Ariz. Ct. App. 2002) ("As our supreme court has explained . . . if there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." (quotation marks omitted)); David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) ("[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.  It follows that a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract." (citation and quotation marks omitted)); In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 846 (S.D. Ohio 2012) ("When a consumer seeks compensation for a defective product that failed, the warranty covers the subject matter in dispute and an unjust enrichment claim does not lie.  A plaintiff cannot use an unjust enrichment claim to alter or expand the terms of an express warranty that covers the product that is the subject of his or her claim." (citation omitted) (applying Georgia law)); Terrill v. Electrolux Home Prod., Inc., 753 F. Supp. 2d 1272, 1291 (S.D. Ga. 2010) (concluding that, when express warranty claims fail, allowing plaintiffs to recover under an unjust enrichment theory would impermissibly expand the terms of the warranty); Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013) ("In general, the remedy of unjust enrichment is not available when a specific contract governs the parties' relationship."); Stavropoulos v. Hewlett-Packard Co., No. 13-cv-5084, 2014 WL 2609431, at *6 (N.D. Ill. June 9, 2014) ("[U]nder Illinois law, [b]ecause unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.  Therefore, Stavropoulos cannot allege an unjust enrichment count based on his breach of warranty claim." (citation and quotation marks omitted)); Thorogood v. Sears, Roebuck & Co., No. 06-cv-1999, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006) ("Where unjust enrichment claims incorporate by reference allegations of the existence of a contract between the parties, courts will dismiss the unjust enrichment claim."); cf. Baldwin v. Star Sci., Inc., No. 14-cv-588, 2016 WL 397290, at *11 (N.D. Ill. Feb. 2, 2016) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." (quotation marks omitted)).  Janusz v. Gilliam, 947 A.2d 560, 567 (Md. 2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." (quotation marks omitted)); Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 551 (D. Md. 2011) ("Plaintiffs have not disputed Defendant's contention that an express contract governs the subject matter of the claim.  Consequently, without a dispute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

concerning the existence of a contract, Plaintiffs are barred from alleging both theories in their Amended Complaint."); <u>FLF, Inc. v. World Publications, Inc.</u>, 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."); <u>Howard v. Turnbull</u>, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) ("If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract."); <u>Patterson Oil Co. v. Verifone, Inc.</u>, No. 2:15-cv-4089, 2015 WL 6149594, at *9 (W.D. Mo. Oct. 19, 2015) ("[T]he unjust enrichment claim arises out of the express warranty contract and must be dismissed."); <u>Budach v. NIBCO, Inc.</u>, No. 2:14-cv-04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015) ("A plaintiff is certainly entitled to bring an unjust enrichment claim as an alternative ground for relief.  But here Budach's unjust enrichment claim is based in part on the warranty.  He alleges he would not have 'purchased NIBCO's PEX products had [he] known that those PEX Products were defective and that NIBCO would not honor the terms of its express warranty.'  Thus, his unjust enrichment claim arises out of the express warranty contract and must be dismissed." (citation and quotation marks omitted)).  Here, plaintiffs seek to recover under a theory of unjust enrichment because they allegedly "incurred unreimbursed, out-of-pocket expenses for materials, tools, and other supplies necessary to repair the defective systems, which rightfully should have been covered by Defendants."  AC ¶ 116.  These damages are covered by the express terms of plaintiffs' warranties.  As a result, the Court concludes that Reardon, LaSala, Lamm, Kimball, Klinge, and Gallagher fail to state claims for unjust enrichment.  The Court therefore **GRANTS Carrier's motion and DISMISSES without prejudice claim 3 with respect to Reardon, LaSala, Lamm, Kimball, Klinge, and Gallagher**.

By contrast, in <u>Astiana v. Hain Celestial Grp., Inc.</u>, 783 F.3d 753 (9th Cir. 2015), the Ninth Circuit reviewed a district court's dismissal of a unjust enrichment claim on the grounds that it was duplicative or superfluous of other contractual claims.  In its review, the Ninth Circuit recognized that "in California, there is not a standalone cause of action for 'unjust enrichment.'"  <u>Id.</u> at 762.  Nonetheless, the Ninth Circuit concluded that the plaintiff's allegations were sufficient to state a "'quasi-contract' cause of action" and the duplicative nature of a quasi-contractual claim was an insufficient basis for dismissal.  <u>Id.</u> at 762–63.  Subsequently, "[s]everal decisions . . . have permitted what were previously considered to be superfluous unjust enrichment claims to survive the pleading stage in light of the Ninth Circuit's decision in <u>Astiana</u>."  <u>Loop AI Labs Inc. v. Gatti</u>, No. 15-cv-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | **'O'** |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

00798, 2015 WL 5158639, at *7 (N.D. Cal. Sept. 2, 2015); see also Main v. Gateway Genomics, LLC, No. 15-cv-02945-AJB-WVG, 2016 WL 7626581, at *16 (S.D. Cal. Aug. 1, 2016) ("Defendant moves to dismiss Plaintiffs' claim for unjust enrichment on the grounds that it is not a separate cause of action under California law. . . . The Ninth Circuit [in Astiana] recently foreclosed upon the argument advanced by Defendant."); In re Safeway Tuna Cases, No. 15-cv-05078-EMC, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016) (pursuant to Astiana, permitting breach of warranty and unjust enrichment claims, even though they are duplicative); Arroyo v. TP-Link USA Corp., No. 5:14-cv-04999-EJD, 2015 WL 5698752, at *11 (N.D. Cal. Sept. 29, 2015) (permitting plaintiff to plead breach of express warranty and unjust enrichment); but see Dickey v. Advanced Micro Devices, Inc., No. 5:15-cv-04922-RMW, 2016 WL 1375571, at *8 (N.D. Cal. Apr. 7, 2016) ("In this case, the court finds that plaintiff's unjust enrichment theory rests on allegations covered by other claims that provide for legal remedies. Plaintiff's unjust enrichment claim is superfluous, and, accordingly, dismissed." (citation and quotation marks omitted)). Accordingly, the Court **DENIES Carrier's motion to dismiss Oddo's unjust enrichment claim.**

## VI.   CONCLUSION

Breach of Express Warranty

The Court DISMISSES without prejudice claims 1 (to the extent plaintiffs plead breach of *express* warranty), 4, 9, 14, 18, 21, 24, and 27.

Breach of Implied Warranty

The Court GRANTS Carrier's motion to dismiss the following claims: 1 (to the extent plaintiffs plead breach of *implied* warranty), 10, 12, 15, 19, 22, 25, and 28. The Court DISMISSES claims 1, 10, 15, 19, 22, 25, and 28 without prejudice, and DISMISSES claim 12 with prejudice.

Misrepresentation

The Court DISMISSES without prejudice claims 2, 5, 6, 7, 8, 11, 13, 16, 17, 20, 23 and 26 *to the extent such claims rely on alleged misrepresentations*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Fraudulent Omission and Concealment

To the extent Carrier's motion contests the specificity of plaintiffs' pleadings, the Court DENIES Carrier's motion to dismiss Oddo, Lamm, Kimball, Klinge, and Gallagher's fraudulent omission and concealment claims.  However, the Court GRANTS Carrier's motion to dismiss Reardon and LaSala's fraudulent omission and concealment claims and, therefore, DISMISSES without prejudice claims 2, 5, 11, and 13 in relation to Reardon and LaSala *to the extent such claims rely on alleged omissions or concealment*.

The Court DENIES Carrier's motion to dismiss plaintiffs' fraudulent omission and concealment claims to the extent Carrier seeks dismissal on the basis of disclosure of the TXV issue.

Common Law Negligent Misrepresentation and Fraudulent Concealment Claims

The Court DISMISSES without prejudice claims 2 and 5 with respect to Reardon, LaSala, and Lamm because those claims are barred by the economic loss doctrine.

The Court DISMISSES with prejudice claims 2 and 5 with respect to Kimball and Gallagher because plaintiffs concede that these claims are barred by the economic loss doctrine.

Unfair Trade Practices

The Court DISMISSES without prejudice claims 6, 8, 11, 13, 16, 17, 20, 23, and 26 to the extent these claims are based on allegations that Carrier sold defective HVAC systems with an insufficient warranty and imposed "repairs" that caused further damage.

Unjust Enrichment

The Court DISMISSES without prejudice claim 3 with respect to Reardon, LaSala, Lamm, Kimball, Klinge, and Gallagher.  The Court DENIES Carrier's motion to dismiss claim 3 in relation to Oddo.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | January 24, 2016 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Plaintiffs shall have **fourteen (14)** days from the date of this order to file a second amended complaint addressing the deficiencies identified herein.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |