1  KIRKLAND & ELLIS LLP
   Daniel A. Bress (State Bar No. 257305)
2  daniel.bress@kirkland.com
   Devin S. Anderson (*pro hac vice*)
3  devin.anderson@kirkland.com
   655 Fifteenth Street NW
4  Washington, DC  20001
   Telephone: (202) 879-5000
5  Facsimile: (202) 879-5100

6  C. Robert Boldt (State Bar No. 180136)
   robert.boldt@kirkland.com
7  Jonathan Jeffrey Faria (State Bar No. 274019)
   jonathan.faria@kirkland.com
8  333 South Hope Street
   Los Angeles, CA 90071
9  Telephone: (213) 680-8400
   Facsimile: (213) 680-8500
10
   Attorneys for Defendants
11
                  **UNITED STATES DISTRICT COURT**
12
                  **CENTRAL DISTRICT OF CALIFORNIA**
13

14 STEVE ODDO, RAJENE REARDON,       )   CASE NO. 8:15-cv-01985 CAS (Ex)
   ANTHONY LASALA, LINDA LAMM,       )
15 KEITH KIMBALL, NORMAN KLINGE,     )   **MEMORANDUM OF LAW IN**
   and DAN GALLAGHER, on behalf of   )   **OPPOSITION TO PLAINTIFFS'**
16 themselves and all others similarly )  **MOTION FOR LEAVE TO FILE**
   situated,                         )   **SECOND AMENDED**
17                                    )   **COMPLAINT**
18             Plaintiffs,            )
                                      )   **REDACTED VERSION OF**
19 v.                                 )   **DOCUMENT PROPOSED TO BE**
                                      )   **FILED UNDER SEAL**
20                                    )
21 ARCOAIRE AIR CONDITIONING AND     )
   HEATING, CARRIER CORPORATION,     )   Amended Complaint Filed: March 7,
22 BRYANT HEATING AND COOLING        )   2016
   SYSTEMS, COMFORTMAKER AIR         )
23 CONDITIONING & HEATING,           )
   INTERNATIONAL COMFORT             )   Judge:      Christina A. Snyder
24 PRODUCTS LLC, and UNITED          )   Hearing:    August 7, 2017
   TECHNOLOGIES CORPORATION,         )   Time:       10:00 AM
25                                    )   Courtroom:  5
26                                    )
27             Defendants.            )
                                      )
28 _____   )

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND ...............................................................................................3

    A.    Carrier's Motions to Dismiss and the Court's Ruling....................... 3

    B.    The May 8, 2017 Scheduling Conference......................................... 4

LEGAL STANDARD ........................................................................................6

I.    PLAINTIFFS' MOTION TO AMEND VIOLATES THIS COURT'S ORDERS AND WAS NOT BROUGHT IN A DILIGENT MANNER ............. 6

II.    ALLOWING PLAINTIFFS TO FILE THEIR PROPOSED SECOND AMENDED COMPLAINT WOULD BE FUTILE.........................................13

    A.    Plaintiffs' Proposed Amendments Do Not Cure The Deficiencies In Their Express Warranty Claims ................................................... 13

    B.    Plaintiffs' Proposed Amendments Do Not Cure The Deficiencies In Their Implied Warranty Claims .................................................... 18

    C.    Plaintiffs' Proposed Amendments Do Not Cure Plaintiffs' Failure To Provide Notice To Carrier Of Their Warranty Claims ................................. 20

III.    ALLOWING PLAINTIFFS TO AMEND A SECOND TIME WOULD PREJUDICE CARRIER..............................................................................24

CONCLUSION................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
   465 F.3d 946 (9th Cir. 2006) .................................................................6, 8, 24

*Bolling v. Gold*,
   2015 WL 2406487 (W.D. Wash. May 19, 2015) ...................................24, 25

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) ................................................................13

*Brothers v. Hewlett-Packard Co.*,
   2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ...................................17

*Brown v. China Integrated Energy, Inc.*,
   2013 WL 12124097 (C.D. Cal. Sept. 4, 2013) ..........................10

*Carrico v. City & Cty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) .............................................13

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) ..............................................13

*Christison v. Biogen Idec*,
   2014 WL 3749191 (D. Utah July 29, 2014) .....................11

*David v. Am. Suzuki Motor Corp.*,
   629 F. Supp. 2d 1309 (S.D. Fla. 2009) .............................20

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ...........................................6

*Feinour v. Ricker Co.*,
   566 S.E.2d 396 (Ga. Ct. App. 2002).................................17

*Forward-Rossi v. Jaguar Land Rover N. Am., LLC*,
   2016 WL 3396925 (C.D. Cal. June 13, 2016) ...................17

*Golub v. Milpo, Inc.*,
   522 N.E.2d 954 (Mass. 1988) .............................................17

*Helpling v. Rheem Manufacturing Co.*,
  2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ..................................... 13, 14, 16, 19, 21

*Houston v. Country Coach, Inc.*,
  2008 WL 2783485 (N.D. Cal. July 17, 2008) ............................................................. 17

*In re Toyota Motor Corp.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................... 17

*Jackson v. Bank of Haw.*,
  902 F.2d 1385 (9th Cir. 1990) .................................................................................. 8

*Jensen v. BMW of N. Am., Inc.*,
  35 Cal. App. 4th 112 (1995) ................................................................................... 17

*K.J.P. v. Cty. of San Diego*,
  2016 WL 7385594 (S.D. Cal. Oct. 11, 2016) .......................................................... 6, 7

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1995) .................................................................................. 18

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................ 19, 20

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ............................................................................... 8, 11

*Mortg. Indus. Sols. v. Collabera, Inc.*,
  2013 WL 440644 (C.D. Cal. Feb. 4, 2013) .......................................................... 8, 13

*Parenteau v. Gen. Motors, LLC*,
  No. 14-cv-4961-RGK-MAN, 2015 WL 1020499 (C.D. Cal. Mar. 5,
  2015) ..................................................................................................................... 18

*Park-Kim v. Daikin Indus., Ltd.*,
  2016 WL 1069035 (C.D. Cal. Mar. 17, 2016)........................................................... 15

*Patron Aviation Inc. v. Teledyne Indus., Inc.*,
  267 S.E.2d 274 (Ga. Ct. App. 1980)...................................................................... 17

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
  2005 WL 1459555 (N.D. Cal. June 21, 2005)......................................................... 10

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
  144 Cal. App. 4th 785 (2006) ................................................................................ 17

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (2015) ................................................................. 17

*Salessi v. Commonwealth Land Title Ins. Co.*,
   2013 WL 5676209 (C.D. Cal. Oct. 16, 2013) ............................................. 6

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009) ............................................................... 11

*Susilo v. Wells Fargo Bank, N.A.*,
   2012 WL 5179531 (C.D. Cal. Oct. 16, 2012) ............................................. 8

*Texaco, Inc. v. Ponsoldt*,
   939 F.2d 794 (9th Cir. 1991) ...................................................................... 8

*Torres v. Nissan N. Am. Inc.*,
   2015 WL 5170539 (C.D. Cal. Sept. 1, 2015) ............................................ 15

*Whitehead v. John Bleakley RV Ctr., Inc.*,
   2010 WL 925091 (N.D. Ga. Mar. 8, 2010) ............................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 24

Fed. R. Civ. P. 15 ..................................................................................... 3, 6

Fed. R. Civ. P. 26(b)(3) ............................................................................... 10

Fed. R. Civ. P. 30(b)(6) ............................................................................... 11

iv

# INTRODUCTION

Plaintiffs' motion for leave to amend their complaint does exactly what this Court told plaintiffs not to do.  On January 24, 2017, this Court dismissed all of plaintiffs' warranty-based claims and gave plaintiffs "**fourteen (14)** days from the date of this order to file a second amended complaint addressing the deficiencies identified herein."  1/24/17 Order 40 (ECF No. 57).  Those 14 days came and went, with plaintiffs informing the Court that they had "elected not to amend their complaint."  2/21/17 Joint Stip. 2 (ECF No. 58).  At a scheduling conference months later, and in response to Carrier's counsel seeking clarification on the scope of permissible amendment, the Court explicitly told plaintiffs: "I am not trying to reopen my ruling on the motion to dismiss.  I'm not saying that you can add claims at this juncture for those existing plaintiffs."  Ex. A (5/8/17 Hr'g Tr. 13:4-7).  Now, 143 days after the 14-day period expired, and in direct contravention of this Court's instructions, plaintiffs remarkably seek to re-plead their dismissed warranty-based claims and reopen the Court's ruling on the motion to dismiss, *see* Pls.' Br. 1 (ECF No. 78), without mentioning what the Court said on this very issue at the scheduling conference.

Plaintiffs' request is improper, untimely, and should be denied.  And it is only made more troubling by plaintiffs' representation that they are filing their motion now in light of documents from third-party Emerson Technologies that plaintiffs claim were "recently discovered" and "produced in this case just *three weeks ago*."  *Id.* at 7.  What plaintiffs fail to tell the Court is that their counsel is litigating a separate putative class action in federal court in Oklahoma against another HVAC manufacturer that involves the same allegations as this case.  *See Emmert v. ClimateMaster*, No. 5:15-cv-00458-R (W.D. Okla.).  In *Emmert*, Emerson produced documents in response to a third-party subpoena issued by plaintiffs' same counsel; the subpoena plaintiffs served in this case simply asked Emerson to produce the exact same documents that it had produced in *Emmert*.

Based on Carrier's investigation, plaintiffs' counsel received documents from Emerson in *Emmert* containing the central information on which plaintiffs purport to base their proposed amendments on ***April 6, 2016***.  This was more than two months *before*

plaintiffs in this case filed their June 10, 2016 opposition to Carrier's motion to dismiss, and more than nine months before the Court issued its January 24, 2017 ruling on that motion. Other documents quoted in the complaint were produced in *Emmert* on March 7, 2017, two months before plaintiffs appeared at the May 8, 2017 status conference and told the Court they understood they could not reopen dismissed claims. Thus, while the Emerson documents were produced "in this case" on June 9, 2017, they were produced to plaintiffs' counsel much earlier. Plaintiffs' disregard for the Court's instructions at the May 8, 2017 conference and their incomplete account of when they became aware of the Emerson information more than justifies denying plaintiffs' motion to file what would be their third complaint in this case.

Plaintiffs' efforts are also futile because their new allegations do nothing to cure the deficiencies the Court identified in plaintiffs' warranty-based claims. After plaintiffs' thermal expansion valves (TXVs) allegedly clogged, their systems were restored to operation through the Carrier-authorized remedies of a new TXV or the A/C Re-New additive. The Court thus held that because plaintiffs did not allege "current failures of their units," their warranty claims failed. 1/24/17 Order 23. While plaintiffs claim that Emerson documents identify potential ways that A/C Re-New may affect their systems, simply adding more allegations about "the potential for A/C Re-New to cause harm" does not "overcome the flaw" the Court found in plaintiffs' warranty claims, namely, the absence of any allegation that "plaintiffs' HVAC units continued to malfunction after the injection of A/C Re-New." *Id.* Nor can plaintiffs fix the notice problems that the Court identified with their warranty claims. *See id.* at 11-13. Plaintiffs ask the Court to revisit that analysis based on 2015 communications with Carrier that took place long before plaintiffs filed this lawsuit and that plaintiffs failed to bring to the Court's attention earlier. In any event, those communications do nothing to cure the deficiencies the Court identified.

At this point, and after already filing two motions to dismiss, Carrier has had to spend significant time and resources responding to plaintiffs' motion to amend while it is at the same time devoting extensive resources to ongoing discovery, which is necessarily

2

based on the scope of the Court's lengthy ruling on the motion to dismiss. Plaintiffs' motion to amend is an improper and prejudicial maneuver that violates both Rule 15 and this Court's orders, and that does nothing to fix the flaws inherent in plaintiffs' deficient warranty claims. Plaintiffs' motion should be denied.

**BACKGROUND**

### A. Carrier's Motions to Dismiss and the Court's Ruling

Plaintiff Steve Oddo filed this lawsuit against Carrier on November 25, 2015, raising various claims based on the build-up of a substance that clogged TXV in his HVAC unit. *See* 11/25/15 Compl. (ECF No. 1). The complaint alleged that clogged TXVs had been caused by Emerson, a Carrier compressor supplier that had used an unauthorized rust inhibitor. *See id.* ¶¶ 21, 62. Carrier moved to dismiss, *see* 2/12/16 Carrier Mot. to Dismiss (ECF No. 19), and rather than oppose that motion, plaintiffs filed an amended complaint. *See* 3/7/16 Am. Compl. (ECF No. 27). That first amended complaint expanded the scope of the lawsuit dramatically by adding six new named plaintiffs, 19 new claims, and issues of statutory and tort law across seven States.

Carrier moved to dismiss the Amended Complaint and briefing on that motion took place in May–July of 2016. On January 24, 2017, and in a 40-page decision, the Court granted Carrier's motion in relevant part, holding that plaintiffs failed to state a claim for breach of express and implied warranties. *See* 1/24/17 Order 9-27. The "flaw" in plaintiffs' warranty claims, the Court held, was that "plaintiffs fail to allege that their HVAC units continued to malfunction after the injection of A/C Re-New." *Id.* at 23; *see also id.* at 26 ("Plaintiffs do not allege in the operative complaint that the injection of the A/C Re-New into their systems has resulted in any current defect in their HVAC systems."). The Court considered and rejected plaintiffs' argument that "the A/C Re-New injections did not satisfy Carrier's obligations under the warranties because the repairs addressed the symptoms of the defect, not the underlying defect, and because the injections cause additional hidden damage." *Id.* at 22. The Court further held that plaintiffs Oddo,

LaSala, Kimball, and Klinge could not bring warranty claims because they had not provided Carrier with the required notice. *See id.* at 12-13.

The Court dismissed the express and implied warranty claims without prejudice and ordered that "Plaintiffs shall have **fourteen (14)** days from the date of this order to file a second amended complaint addressing the deficiencies identified herein." *Id.* at 40.

## B.    The May 8, 2017 Scheduling Conference

Plaintiffs "elected not to amend their complaint." 2/21/17 Joint Stip. 2. In a May 1, 2017 joint case management conference statement some months later, plaintiffs "propose[d] to add additional named plaintiffs by September 21, 2017." 5/1/17 Report 3 (ECF No. 62) (emphasis removed). Plaintiffs made no mention of seeking leave to amend to reinstate their dismissed warranty claims. At a May 8, 2017 scheduling conference a week later, the parties and the Court discussed the deadline for plaintiffs to add parties. Ex. A (5/8/17 Hr'g Tr. 11:9 - 12:16). The parties and the Court then had a colloquy on the permissible scope of amendment, in which (1) plaintiffs made no suggestion of moving to amend to reinstate claims the Court had dismissed; and (2) the Court made clear plaintiffs could not do so:

> [COUNSEL FOR PLAINTIFFS]: Your Honor, there were two other issues presented. One was the deadline to add parties.
>
> THE COURT: Yes.
>
> [COUNSEL FOR PLAINTIFFS]: We had proposed September 21st. And the reason for that is primarily because we get a steady stream of people contacting us about this issue. It tends to pick up over the summer and so our thinking was to put the deadline after the summer so that we would have a full opportunity to speak with as many people as possible.
>
> [COUNSEL FOR CARRIER]: And, Your Honor, on behalf of the defendants, having additional plaintiffs joining the case as late as September 21, 2017 sounds excessive to us. These people, if they are putative class members, would be entitled to any class-wide relief that would otherwise be available to them. But to have new people joining the case possibly leading to additional motions practice after Your Honor had already issued a substantial ruling, we think is not necessarily the most efficient course. And if there are additional plaintiffs that the plaintiffs have already been contacted by, we don't know why they couldn't be added sooner subject to any motion we may file.

THE COURT: I don't think that's unreasonable.  I understand that probably people become more irritated with their air conditioning during the summer if it's not working.  But that said given the fact that this is a class action and the fact that the people who have been named presumably are fair representatives, obviously, if there's someone who's already contacted you and you want to add them as plaintiffs, I don't hear the defendants really objecting about that, but you really only need so many plaintiffs and at the end of the day, the legal issues are gonna be the same.

[COUNSEL FOR PLAINTIFFS]: Understood, Your Honor.

THE COURT: So let me just set that.  If you can't agree to the addition of plaintiffs, any motion to add plaintiffs or claims for relief for that matter should be brought no later than June 30th.

[COUNSEL FOR CARRIER]: And, Your Honor, just to clarify with respect to additional plaintiffs, I understand that.  **With respect to additional claims for relief, I think Your Honor's motion to dismiss opinion did give the plaintiffs 14 days to amend if they wanted to cure any deficiencies or change the complaint which they elected not to do.  So in our view the time for adding more claims would be past.**  If there's a new plaintiff that comes in, we could deal with it at that point.

THE COURT: **Well, I guess all I'm saying is yes, I am not trying to reopen my ruling on the motion to dismiss.  I'm not saying that you can add claims at this juncture for those existing plaintiffs.  All I'm saying is if you have a new plaintiff who somehow has a new or different claim that hasn't already been addressed by the Court**, I suppose you should have the right to bring a motion to add that person with his or her unique claim, but I don't know why you'd want to do that.

[COUNSEL FOR PLAINTIFFS]: **Understood, Your Honor.**

*Id.* at 11:9 - 13:13 (emphasis added).

On June 30, 2017, plaintiffs nevertheless filed the instant motion for leave to file a second amended complaint.  *See* 6/30/17 Pls.' Mot. for Leave (ECF No. 74).  The plaintiffs' proposed second amended complaint does not add new parties with new claims, but instead attempts to revive the dismissed warranty claims for plaintiffs Oddo, LaSala, Lamm, Klinge, and Gallagher, each of whom were named plaintiffs when the Court considered Carrier's motion to dismiss.[1]

---

[1] Plaintiffs' proposed second amended complaint contains all 28 counts that were present in their first amended complaint, including fraud and unfair trade practices claims that the Court either partially or wholly dismissed in its January 24, 2017 Order.  Despite that,

5

**LEGAL STANDARD**

Consistent with Rule 15, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted); *see also Salessi v. Commonwealth Land Title Ins. Co.*, 2013 WL 5676209, at *11 (C.D. Cal. Oct. 16, 2013) ("[C]ourts have discretion to deny leave to amend if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit.") (citation omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1026 (9th Cir. 2000) (citation omitted). In addition, "there is no doubt that the district court has the discretion to deny a plaintiff leave to amend his or her complaint to add claims already dismissed." *K.J.P. v. Cty. of San Diego*, 2016 WL 7385594, at *2 (S.D. Cal. Oct. 11, 2016) (citation omitted).

## I.   PLAINTIFFS' MOTION TO AMEND VIOLATES THIS COURT'S ORDERS AND WAS NOT BROUGHT IN A DILIGENT MANNER

A motion to amend may be denied where the request is untimely and where it reflects an absence of good faith. *See, e.g.*, *AmerisourceBergen Corp.*, 465 F.3d at 951. Under the present circumstances, Carrier does not understand how plaintiffs can in good faith move to revive dismissed warranty claims in the face of the Court's clear directive not to do so, and when plaintiffs provide an incomplete account as to when they learned of the documents from Emerson that form the basis for their amended allegations. Either of these points alone would justify denying plaintiffs' motion, and taken together they confirm that plaintiffs' request is improper.

---

plaintiffs seek leave only to revive "the breach of warranty, breach of implied warranty, and Magnusson-Moss claims asserted by Plaintiffs Oddo, Lamm, LaSala, Klinge, and Gallagher." Pls.' Br. 1 n.1. Plaintiff LaSala had been dismissed from this case entirely under the Court's January 24, 2017 Order, and thus seeks to reenter the case.

***First***, plaintiffs' attempt to revive their warranty claims directly contradicts this Court's January 24, 2017 Order and its instructions at the May 8, 2017 hearing.  When it dismissed their warranty claims, the Court gave plaintiffs "**fourteen (14)** days … to file a second amended complaint addressing the deficiencies identified herein."  1/24/17 Order 40 (bold in original).  Plaintiffs "elected not to amend their complaint."  2/21/17 Joint Stip. 2.  They then proceeded to make submissions to the Court about potentially adding new plaintiffs to the case and further engaged with the Court on that issue, *see* 5/1/17 Report at 3 (ECF No. 62); Ex. A (5/8/17 Hr'g Tr. 11:9 - 13:13), without suggesting any intention to revive dismissed claims.

Later, when the issue of amendment came up at the May 8, 2017 conference, the Court confirmed that plaintiffs could at most add new plaintiffs, not try to reinstate dismissed claims: "**I am not trying to reopen my ruling on the motion to dismiss.  I'm not saying that you can add claims at this juncture for those existing plaintiffs**."  Ex. A (5/8/17 Hr'g Tr. 13:4-7) (emphasis added); *see also id.* at 13:13 ("[COUNSEL FOR PLAINTIFFS]: Understood, Your Honor.").  That plaintiffs make no mention in their moving papers of the Court's instructions and seek leave to amend their dismissed warranty claims nearly five months after the expiration of the 14-day deadline confirms that plaintiffs' motion is untimely, improper, and must be denied.[2]

***Second***, plaintiffs' motion is untimely because they have long known about the facts that form the basis for their proposed complaint.  Indeed, the situation is much more troubling than that because plaintiffs suggest in their supporting papers that they only recently became aware of those facts, when in fact plaintiffs' counsel has been in possession of them for some time.

---

[2] In a footnote, plaintiffs claim their motion "is timely under the June 30, 2017 deadlines set by the Court." Pls.' Br. 6 n.8.  But what plaintiffs refer to is a May 8, 2017 minute order that the Court issued following the May 8, 2017 scheduling conference.  *See* 5/8/17 Minute Order (ECF No. 63).  That minute order stated that "the Court sets the deadline for any Request for leave to file amended pleadings or to add parties shall be filed on or before June 30, 2017." *Id.*  The minute order was based on, and obviously did not intend to contradict, what the Court had told the parties just hours earlier, namely, that plaintiffs were not to seek to reopen dismissed claims.

It is well-established that a motion for leave to amend can be denied when "the moving party knew or should have known the facts and theories raised by amendment in the original pleading." *Amerisource Bergen*, 465 F.3d at 953. This Court has thus not hesitated to deny leave to amend on the basis of undue delay. *See Mortg. Indus. Sols. v. Collabera, Inc.*, 2013 WL 440644, at *3 (C.D. Cal. Feb. 4, 2013); *Susilo v. Wells Fargo Bank, N.A.*, 2012 WL 5179531, at *1 (C.D. Cal. Oct. 16, 2012). Courts have recognized that delays of many months between "the time of obtaining a relevant fact and seeking a leave to amend [are] unreasonable," and warrant denying leave. *Amerisource Bergen*, 465 F.3d at 953 (15-month delay unreasonable); *see also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (eight-month delay unreasonable); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) (seven-month delay unreasonable); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) (six-month delay unreasonable); *Mortg. Indus. Sols., Inc.*, 2013 WL 440644, at *3 (C.D. Cal. Feb. 4, 2013) (eight-month delay unreasonable).

In the very first line of their supporting papers, plaintiffs represent that they are seeking leave "based on ***recently discovered evidence*** produced in this action by Emerson Technologies," which manufactured the compressors that contained the unauthorized rust inhibitor that allegedly caused the TXV clogs. Pls.' Br. 1 (emphasis added). Plaintiffs assert that their motion is timely because "the Emerson documents, on which Plaintiffs' new A/C Re-New allegations are based, were produced in this case just *three weeks ago*." *Id.* at 7. Similar representations appear throughout plaintiffs' brief. *See id.* at 1 ("newly discovered evidence"); *id.* at 7 ("[T]he facts that give rise to the amendment were only recently discovered."); *id.* (claiming plaintiffs filed their motion "shortly after discovering facts that give rise to the proposed amendment"); *id.* at 8 ("Plaintiffs discovered these facts only recently."); *id.* at 22 ("Plaintiffs have filed this motion promptly—just three weeks after the relevant documents were produced by Emerson in this case.").

These representations are at best incomplete and at worst misleading. As noted above, plaintiffs' same lawyers (including the lead lawyer who represented plaintiffs at the

May 8, 2017 conference in this case) are litigating a copy-cat TXV lawsuit in federal court in Oklahoma, styled *Emmert v. ClimateMaster*, No. 5:15-cv-00458-R (W.D. Okla.). In the instant case, plaintiffs issued a subpoena calling for Emerson to produce "[a]ll documents you produced in the Emmert v. ClimateMaster action." Ex. B (5/18/17 *Oddo* Subp. to Emerson); *see also* Ex. C (1/18/16 *Emmert* Subp. to Emerson). Emerson re-produced those documents in this case to plaintiffs' counsel on June 9, 2017, and produced them to Carrier for the first time on June 15, 2017.

When Carrier received plaintiffs' proposed second amended complaint referencing and quoting (but not attaching) documents produced by Emerson, Carrier contacted Emerson's counsel to find out when these documents had been produced in *Emmert*. It turns out that the principal Emerson-produced documents on which plaintiffs' proposed second amended complaint is based were produced to plaintiffs' counsel in *Emmert* on ***April 6, 2016***.

Specifically, plaintiffs in their proposed complaint repeatedly quote documents discussing testing on A/C Re-New conducted by Emerson and Lennox, another HVAC manufacturer—documents that plaintiffs use as their primary basis for claiming that A/C Re-New may cause ongoing problems in the future. *See* Pls.' Ex. A, Proposed 2nd Am. Compl. ¶¶ 19, 24, 26, 31, 95, 97-99, 101, 103-105, 113 (ECF No. 78-1); *see also* Ex. D (Emerson A/C Renew Testing PowerPoint) (produced to plaintiffs' counsel in *Emmert* on April 6, 2016 and quoted or referenced in Proposed 2nd Am. Compl. ¶¶ 26, 97-101, 103-105, 113); Ex. E (Lennox TXV Debris Technical Evaluation Summary PowerPoint) (produced to plaintiffs' counsel in *Emmert* on April 6, 2016 and quoted or referenced in Proposed 2nd Am. Compl. ¶¶ 19, 24, 31); Ex. F (2/11/13 Emerson Lubricants Seminar) (produced to plaintiffs' counsel in *Emmert* on April 6, 2016 and quoted in Proposed 2nd Am. Compl. ¶ 95). These documents were all produced to plaintiffs' counsel in *Emmert* on April 6, 2016—a month before Carrier moved to dismiss plaintiffs' first amended complaint and nearly ten months before this Court issued its January 24, 2017 Order dismissing plaintiffs' warranty claims. *See* Ex. J (Decl. of J. Pickens) (declaration from

Emerson's counsel identifying production dates in *Emmert*). In fact, according to Emerson, plaintiffs' counsel in *Emmert* received nearly 8,000 pages of documents from Emerson on April 6, 2016. *See id.* ¶ 2.[3]

After obtaining the dates of production from Emerson, Carrier wrote to plaintiffs' counsel informing them of Carrier's understanding as to when the above-referenced documents were produced in *Emmert*, and asking plaintiffs to correct the record if Carrier's understanding was incorrect. Ex. K (7/19/17 Carrier Ltr. to Pls.) ("We further understand, based on our review of the proposed second amended complaint and information from Emerson's counsel, that the following are the documents referenced in the proposed second amended complaint and the dates they were produced to you in *Emmert*…. If any of the foregoing is incorrect please let us know this week."). Plaintiffs did not dispute that Carrier correctly identified documents that they had referenced and quoted, nor did plaintiffs dispute the dates of production in *Emmert*. *See* Ex. L (7/20/17 Pls.' Email to Carrier).[4]

---

[3] Plaintiffs' proposed complaint also references three emails produced by Emerson. *See* Ex. G (10/13/14 J. Clark Email (referenced in Proposed Second Am. Compl. ¶¶ 26, 107-110); Ex. H (8/24/14 K. Monnier Email) (referenced in Proposed Second Am. Compl. ¶ 95); Ex. I (8/6/15 C. Rismiller Emails) (referenced in Proposed Second Am. Compl. ¶¶ 117-118). These emails were produced to plaintiffs' counsel in *Emmert* on March 7, 2017. *See* Ex. J (Decl. of J. Pickens). But as indicated above, based on plaintiffs' own proposed complaint, the documents that form the central basis for plaintiffs' allegations that A/C Re-New could cause additional harm are two PowerPoint presentations attached hereto as Exhibits D and E.

[4] In their response to Carrier's letter, plaintiffs claimed that while Carrier had "correctly identified a few of the Emerson documents on which our proposed complaint is based, [it had] not identified all of them." Ex. L (7/20/17 Pls.' Email to Carrier). According to plaintiffs, "[t]here are at least dozens of Emerson documents that support our new allegations," but plaintiffs claimed no "obligation to identify them …, since that constitutes our work product." *Id.* Notably plaintiffs did not identify any other Emerson-produced documents that were actually quoted or specifically referenced in the complaint (as opposed to ones that may have merely "supported" or informed plaintiffs' new allegations). Nor did plaintiffs identify when these other unmentioned documents were produced to them in *Emmert*. Plaintiffs cannot attempt to insulate review of their diligence in amending their complaint through a misplaced reliance on the work product doctrine, which protects only "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). Quite plainly, Carrier is entitled to know the basis for factual allegations in a proposed complaint. *See, e.g.*, *Brown v. China Integrated Energy, Inc.*, 2013 WL 12124097, at *4 (C.D. Cal. Sept. 4, 2013) ("[T]he documents at issue are those that support plaintiffs' claims directed at Sherb, which form the very crux of the litigation as to these parties…. Accordingly, in the circumstances here, the work product doctrine does not shield the requested documents."); *Plumbers &*

1    Because the main documents on which plaintiffs rely were produced to plaintiffs'

2    counsel some time ago in *Emmert*, they have had more than ample time to review these

3    materials and use them to try to amend plaintiffs' complaint in a timely fashion.  *See, e.g.*,

4    *McGlinchy*, 845 F.2d at 809 ("[U]ndue delay is one valid reason for a district court to deny

5    a party leave to amend.") (citation omitted).  In fact, by the time of the May 8, 2017 status

6    conference in this case, plaintiffs' same counsel had already (without notice to Carrier)

7    deposed Emerson's Rule 30(b)(6) witness in the *Emmert* case and had used five of the

8    above-referenced documents as exhibits.  *See* Ex. M (4/26/17 Emerson Dep. Cover Page

9    & Exs. 22, 25, 27, 29, 31).  That plaintiffs' counsel was familiar enough with the documents

10   to depose an Emerson corporate representative confirms the extent of plaintiffs' counsel's

11   knowledge and understanding of the Emerson documents.  And yet at the May 8, 2017

12   conference, plaintiffs did not even allude to the Emerson documents and instead stated that

13   they "[u]nderstood" the Court's instruction not to file an amended complaint that sought to

14   reopen dismissed claims.  Ex. A (5/8/17 Hr'g Tr. at 13:13).

15       In short, instead of bringing these documents before the Court when they first

16   received them, plaintiffs allowed this case to proceed through extensive briefing on a

17   motion to dismiss that produced a 40-page opinion from this Court.  That opinion has set

18   the terms for the discovery that is already taking place in this case.  And if the delay were

19   not enough, plaintiffs repeatedly represent to this Court that the Emerson materials were

20   "recently discovered evidence," Pls.' Br. 1, and "were produced in this case just *three*

---

*Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555, at *6 (N.D. Cal. June 21, 2005) ("[T]he Court can see no justifiable reason why Plaintiffs should not produce, or at least identify, documents that support Plaintiffs' allegations in the FAC, whether they are in Defendants' possession or in the public domain."); *Christison v. Biogen Idec*, 2014 WL 3749191, at *3 (D. Utah July 29, 2014) (holding that work product doctrine did not apply to compilation of "documents that support Plaintiff's complaint allegations"); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 411 (S.D.N.Y. 2009) ("It is patently inequitable to require a party to search ten million pages to find documents already identified by its adversary as supporting the allegations of a complaint.").  Regardless, Carrier identified the documents that plaintiffs directly reference or quote in their proposed second amended complaint, and there can be no dispute that the key Emerson and Lennox testing documents on which plaintiffs' base their new allegations have been in their counsel's possession since April 6, 2016.

*weeks ago*," *id.* at 7, with no mention of how long plaintiffs' counsel has actually had this information (over a year for the key documents regarding testing of A/C Re-New). These representations also warrant denial of plaintiffs' motion.[5]

Finally, plaintiffs attempt to address the Court's ruling that certain plaintiffs failed to provide notice to Carrier of their warranty claims, but plaintiffs base their new allegations on communications with a Carrier in-house attorney *in 2015*. *See* Pls.' Br. 16-20. Plaintiffs freely admit that all of this correspondence took place "two and a half months prior to the filing of the initial complaint." *Id.* at 16. Plaintiffs did not include this additional correspondence in their initial complaint or bring the exchange to the Court's attention in connection with Carrier's May 2016 motion to dismiss.

Plaintiffs claim that doing so "would likely have been futile … because[] absent the additional A/C Re-New allegations, merely adding allegations concerning notice alone would not have changed the ultimate outcome." *Id.* at 8 n.9. Plaintiffs cite no authority for this *ex post* "futility" excuse, and Carrier is aware of none. If plaintiffs believed they had valid warranty claims at the outset, it would not have been "futile" for them to bring the additional 2015 correspondence to the Court's attention much earlier. Plaintiffs were aware from Carrier's very first motion to dismiss that Carrier believed failure to provide notice under the warranty was an issue warranting dismissal. *See* 2/12/16 Carrier Mot. to Dismiss 6-7. Plaintiffs amended their complaint in response to that initial motion to dismiss, but never pointed to any of the correspondence that plaintiffs now argue saves their warranty claims.

As discussed below, the reason plaintiffs did not point to the 2015 correspondence earlier is likely because that additional correspondence does nothing to solve plaintiffs' notice problems. But the point for present purposes is that plaintiffs "fail[] to offer a

---

[5] Any assertion that plaintiffs' counsel could not have amended the complaint in this case due to the presence of a protective order in *Emmert* or the absence of a protective order in this case is no defense for the delay. Plaintiffs' counsel could have easily sought relief from the protective order in *Emmert* or could have requested a protective order earlier in this case. There were many ways in which plaintiffs could have at least flagged the matter with either Carrier or the Court much earlier.

reasonable explanation for [their] delay in amending [their] complaint." *Mortg. Indus. Sols.*, 2013 WL 440644, at *3. Leave to amend should be denied.

## II.   ALLOWING PLAINTIFFS TO FILE THEIR PROPOSED SECOND AMENDED COMPLAINT WOULD BE FUTILE

Plaintiffs' motion should also be denied because the proposed amendments do not cure the deficiencies the Court identified in plaintiffs' warranty claims. Leave to amend "is properly denied … if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *see also, e.g.*, *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment …, by itself, justif[ies] the denial of a motion for leave to amend."). An amendment is futile if "the complaint would not be saved" by the proposed amendment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010). Although Carrier would expand on these arguments in a third motion to dismiss should plaintiffs be allowed to file a second amended complaint, allowing plaintiffs to amend would be futile because the complaint does not fix the fundamental problems with plaintiffs' warranty claims.

### A.   Plaintiffs' Proposed Amendments Do Not Cure The Deficiencies In Their Express Warranty Claims

The Court dismissed plaintiffs' claims for breach of express warranty because Carrier had fixed the clogs in plaintiffs' TXVs and plaintiffs' units were not continuing to malfunction. The Court explained: "After plaintiffs were provided with TXV replacements and injections of A/C Re-New, plaintiffs do not allege any further failure or malfunction of their HVAC units," which meant that "plaintiffs have failed to plead that the repairs provided, including the injection of A/C Re-New, did not satisfy Carrier's obligations under the warranties." 1/24/17 Order at 23. The Court acknowledged plaintiffs' theory that A/C Re-New "might cause a later malfunction," but found these allegations speculative and irrelevant because plaintiffs' units were indisputably working:

> While it is true that plaintiffs in this case provide greater specificity with respect to the potential for A/C Re-New to cause harm [than did the plaintiffs in *Helpling v. Rheem Manufacturing Co.*, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016)], such specificity does not overcome the flaw that their

13

claims share with the *Helpling* plaintiffs: here, too, plaintiffs fail to allege that their HVAC units continued to malfunction after the injection of A/C Re-New.  In addition, plaintiffs allege only the possibility of future harm arising from the injection of A/C Re-New—not current failures of their units.

*Id*.

Plaintiffs' proposed amended complaint does nothing to remedy this issue because plaintiffs do not include allegations plausibly showing that their units are experiencing any current problem.  In fact, plaintiffs have added no allegations about any of the named plaintiffs' HVAC units.  *See* Proposed 2nd Am. Compl. ¶¶ 38-39, 51-62.  Thus, as before, the complaint shows that Carrier's remedies fixed the TXV clogs, and fails to allege "current failures of [plaintiffs'] units."  1/24/17 Order 23.  Plaintiffs respond that it "is impossible to see the damage caused by AC Renew without conducting a tear down of the system."  Proposed 2nd Am. Compl. ¶ 106; *see also* Pls.' Br. 3.  Setting aside the implications of this remarkable admission with respect to both liability and class certification, plaintiffs have now conceded they cannot plead any "malfunction" or "current failure[]" in their units.  1/24/17 Order 23.  That should be the beginning and end of plaintiffs' motion.

Instead, plaintiffs offer supposedly new allegations about potential *mechanisms* by which A/C Re-New may cause further damage, based on a third party's documents.  *See* Pl.'s Br. 3 ("The results of these tests showed that: (1) injecting A/C Re-New causes acidity far above generally acceptable levels; (2) A/C Re-New, and the resulting acidity, cause the copper used in pipes and coils to dissolve and deposit inside the compressor (called 'copper plating'); (3) A/C Re-New dissolves lead used in the compressor bearings; (4) A/C Re-New causes a significant increase in 'hydrolysis,' or chemical breakdown, of the oil in the systems; and (5) A/C Re-New causes swelling of certain non-metallic materials, such as neoprene, that are commonly used for gaskets, such as in the TXV.") (citing Proposed 2nd Am. Compl. ¶¶ 25, 86, 93-113) (footnote omitted).

But these allegations describe A/C Re-New's claimed effects on certain components of HVAC systems; they do not explain how those alleged effects impact the *likelihood* of

14

harm to plaintiffs' systems.  A breach of warranty claim based on future harm requires "proof that a defect is substantially certain to manifest in malfunction during the useful life of the product."  *Torres v. Nissan N. Am. Inc.*, 2015 WL 5170539, at *4 (C.D. Cal. Sept. 1, 2015) (citation omitted); *see also Park-Kim v. Daikin Indus., Ltd.*, 2016 WL 1069035, at *4 n.5 (C.D. Cal. Mar. 17, 2016) (holding that plaintiffs must allege "that [the] threatened injury [is] *certainly impending* to constitute injury in fact, and … allegations of *possible* future injury are not sufficient") (citation omitted); 5/9/16 Carrier Mot. to Dismiss 13-14 (citing cases).  Plaintiffs' additional allegations about how A/C Re-New can allegedly cause harm do nothing to change the fact that plaintiffs allege "only the possibility of future harm arising from the injection of A/C Re-New," which this Court has already held insufficient.  1/24/17 Order at 23.[6]

Moreover, plaintiffs' new allegations are not really new at all.  As the Court acknowledged, plaintiffs were already alleging "that the A/C Re-New injections … cause additional hidden damage."  1/24/17 Order at 22.  Although plaintiffs claim they have identified a new issue relating to the "highly acidic" nature of A/C Re-New, Proposed 2nd Am. Compl. ¶ 94; *see also id.* ¶¶ 26, 97-100, the operative complaint already made such allegations, *see* Am. Compl. ¶ 25 (referencing the "harmful effects of A/C Re-New because it is highly acidic"), which the Court acknowledged, *see* 1/24/17 Order 23 (referencing the acidity allegation).  Similarly, whereas plaintiffs claim they have identified a new issue with damage to the compressors and oil, *see* Pls.' Br. 3; Proposed 2nd Am. Compl. ¶¶ 26, 104, 108, plaintiffs already alleged in their operative complaint that "A/C Re-New changes the chemical properties and viscosity of the 410A refrigerant/POE oil mixture.  Changing the viscosity of the oil, in particular, may cause additional wear and tear on the compressor and other components."  Am. Compl. ¶ 25.

---

[6] In addition, and as Carrier discusses in Part II.C, plaintiffs' attempt to reinstate a breach of warranty claim predicated on A/C Re-New is futile because no plaintiff provided the notice required by statute and the warranties as to that specific alleged defect.  That is another independent reason why plaintiffs' proposed warranty claims are futile.

Plaintiffs also cannot create a substantial likelihood of future failure by making allegations about testing performed by Lennox, a different HVAC manufacturer who is not a defendant in this case (or in any TXV case). On this score, plaintiffs allege only that ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ Proposed 2nd Am. Compl. ¶ 24; *see also id.* ¶¶ 19, 31. Such allegations "fail to nudge[ ] [Plaintiffs'] claims" against Carrier "across the line from conceivable to plausible." *Helpling*, 2016 WL 1222264, at *7 (citation omitted). Plaintiffs provide no facts or details about this study, which was conducted by a different HVAC manufacturer. There is also no suggestion that Lennox was testing any HVAC products but its own. Plaintiffs offer no basis for generalizing the Lennox testing to the performance of Carrier's units, much less to plaintiffs' own Carrier units, especially when plaintiffs themselves allege that any damage could not be identified without a full teardown of their systems, which plaintiffs have not done. *See* Proposed 2nd Am. Compl. ¶ 106.[7]

Plaintiffs try to align themselves with the "partial repair" line of cases by claiming that Carrier did not "comply with [its] warranty repair obligations by providing repairs that devalue or damage the product, []or by repairs that result in creating or perpetuating a defective condition." Pls.' Br. 10. But this argument merely reprises the theory that

---

[7] It is worth noting that plaintiffs' selective quotations do not accurately reflect the Emerson-produced documents, as those documents contain conclusions or statements that contradict plaintiffs' claims and that plaintiffs omitted from their proposed complaint. For example, the Emerson document entitled "AC Renew Testing—Chemistry Results" finds ██████████████████████████████████████████████████████ ██████████████████████████ Ex. D (Emerson A/C Renew Testing at 2, 3-7). An email that plaintiffs quote as listing "concerns" regarding A/C Renew, *see* Proposed 2nd Am. Compl. ¶ 108, in the preceding sentence states that ██████████████ ████████████████████████ Ex. G (10/10/14 J. Clark Email). Another email notes initial questions that would be addressed in further testing, while observing that a system treated with A/C Renew returned to ████████████████████████ ████████████ Ex. H (8/27/14 K. Monnier Email). Lennox similarly concluded that "A/C ██████████████████████████████████████████████████████ ██████████████████████████ Ex. E (Lennox TXV Debris Technical Evaluation Summary at EMERSON003327, EMERSON003331).

16

plaintiffs already unsuccessfully pressed in opposing Carrier's motion to dismiss. *See* 1/24/17 Order at 22 ("In response, plaintiffs argue that the A/C Re-New injections did not satisfy Carrier's obligations under the warranties because the repairs addressed the symptoms of the defect, not the underlying defect."); Pls.' Opp. to Mot. to Dismiss 13 (ECF No. 43) ("Carrier asserts that it complied with its warranty by injecting A/C Re-New. That is not true. A repair that merely addresses the symptom of a defect (a sticking TXV), but that …, in fact, causes additional hidden damage (including acid and compressor wear), is not a repair at all, and is insufficient to satisfy Carrier's warranty obligations."). Simply citing additional cases for an argument already presented to the Court is an untimely and improper motion for reconsideration, not a basis for leave to amend.

In any event, plaintiffs have not alleged facts that would put them in the "partial repair" category of cases. *See* Pls.' Br. 11-13. In those cases, the plaintiffs pleaded facts showing that the product continued to malfunction because the specific defect at issue was not in fact repaired by the manufacturer.[8]  Not so here.  Plaintiffs have not pleaded facts

---

[8] *See In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1159 (C.D. Cal. 2010) ("[P]laintiffs allege[d] that Toyota officials have acknowledged that the SUA defect has not been completely remedied by the floor mat and 'sticky pedal' recalls."); *Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *1 (N.D. Cal. Feb. 12, 2007) (alleging overheating and graphics distortion five months after product was repaired for graphics distortion); *Forward-Rossi v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3396925, at *4 (C.D. Cal. June 13, 2016) ("Plaintiff "alleg[ed] that she returned the Vehicle to Penegon West's dealership on 'numerous occasions' and that Penegon West still failed to adequately repair the Vehicle" and finding that these facts showed "facially legitimate" claim under permission joinder analysis); *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1182 (2015) (alleging continued display screen problems one month after first repair of display screen problems and six months after second repair); *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 799-800 (2006) ("[T]he same water leak problem, which manifested itself around the shower area of the trailer, persisted despite several repair attempts."); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 120 (1995) ("The brake shimmy disappeared after each [of five] repair[s], but showed up intermittently after a few thousand miles."); *Feinour v. Ricker Co.*, 566 S.E.2d 396, 397 (Ga. Ct. App. 2002) ("The workman only temporarily or cosmetically corrected the underlying problem."); *Patron Aviation Inc. v. Teledyne Indus., Inc.*, 267 S.E.2d 274, 276 (Ga. Ct. App. 1980) (describing continued engine overheating and excessive oil consumption); *Golub v. Milpo, Inc.*, 522 N.E.2d 954, 956 (Mass. 1988) ("Milpo subsequently endeavored to repair the leaks and damage, but, the plaintiff alleges, the leaks continued nevertheless."). *But see Houston v. Country Coach, Inc.*, 2008 WL 2783485 (N.D. Cal. July 17, 2008) (finding failure of proof on breach of implied warranty claim

showing that A/C Re-New failed to restore the cooling function of plaintiffs' HVAC units or is causing any other ongoing malfunction. *See* 1/24/17 Order at 23 ("Absent a 'failure due to defect' of the HVAC systems or a 'part fail[ure],' the warranties do not require Carrier to provide repairs.") (internal quotations omitted).

This same point answers plaintiffs' attempt to re-argue their theory that Carrier's warranty fails of its essential purpose, which plaintiffs advance with reference to legal citations, not any new factual allegations. *See* Pls.' Br. 14-16. The Court has already held that Carrier's warranty did not fail its essential purpose because "plaintiffs do not allege that the repairs on their HVAC systems failed to render their units workable." 1/24/17 Order at 21. Plaintiffs provide no basis for the Court to revisit that ruling, much less to amend their complaint on this point.[9]

### B. Plaintiffs' Proposed Amendments Do Not Cure The Deficiencies In Their Implied Warranty Claims

Plaintiffs' proposed amendments also would not cure the deficiencies in their implied warranty claims. Similar to its ruling on plaintiffs' express warranty claims, the Court rejected the implied warranty claims as follows:

> "[I]t is the defect itself, rather than some theoretical imperfection, that must exist during the warranty period, and that defect must be so severe as to cause the product to fall below the 'minimum level of quality' guaranteed by the warranty." *Grassi* [*v. Int'l Comfort Prods., LLC*], 2015 WL 4879410, at *5 [(E.D. Cal. Aug. 14, 2015)] (quoting *Parenteau v. Gen. Motors, LLC*,

---

where plaintiff presented no evidence of "the consequences likely to occur from the permanent presence of the water in the roof and walls") (case cited by plaintiffs).

[9] Plaintiffs also offer a new argument that Carrier's warranty only contemplates Carrier replacing parts, not repairing them. *See* Pls.' Br. 9 & n.11, 14-16. That is at best a new legal theory and has nothing to do with the Emerson documents that form the stated basis for plaintiffs' motion to amend. *See id.* at 1. It is well established that "[l]ate amendments to assert new theories are not reviewed favorably when … the theory [has] been known to the party seeking amendment since the inception of the cause of action." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1995) (citation omitted), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Retirement Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). The theory is, in any event, meritless. By plaintiffs' own allegations, the TXV was not defective, such that Carrier had no obligation to replace it (even though Carrier in some instances did anyway). *See* Proposed 2nd Am. Compl. ¶ 14 ("These TXV failures were not the result of defective TXVs."). And nothing in the warranty prevents Carrier from using an additive to eliminate a TXV clog.

18

No. 14-cv-4961-RGK-MAN, 2015 WL 1020499, at *11 (C.D. Cal. Mar. 5, 2015)). Plaintiffs do not allege in the operative complaint that the injection of the A/C Re-New into their systems has resulted in any current defect in their HVAC systems. *See Helpling*, 2016 WL 1222264, at *8 n.7 (dismissing a complaint when it "only vaguely suggests—without alleging—that the use of A/C Renew may cause long-term damage"). In fact, as described above, plaintiffs do not allege at all that their units are currently not operational. The Court therefore concludes that plaintiffs have failed to allege a fundamental defect that renders their HVAC systems unfit for their ordinary purpose.

1/24/17 Order at 26; *see also* 5/9/16 Carrier Mot. to Dismiss 22-24 (citing cases). For all of the reasons set forth above with respect to plaintiffs' express warranty claims, plaintiffs certainly have alleged no new facts suggesting a "fundamental defect" of the kind the Court found wanting.

In fact, plaintiffs do not even argue they meet this standard in claiming that their proposed complaint states a claim for breach of implied warranty. Instead, plaintiffs argue for the first time that their HVAC units "do not pass without objection in the trade" because "Defendants and most other major manufacturers refused to accept compressors from Emerson that had been injected with A/C Re-New," and that this is "an issue which the Court did not previously consider." Pls.' Br. 13-14. The reason the Court did not previously consider this issue is because plaintiffs never raised it. To the extent plaintiffs suggest that "pass[ing] without objection in the trade" is a different standard than that articulated by the Court in its ruling on Carrier's motion to dismiss, *id.* at 13, plaintiffs are mistaken (and are once again making an untimely request for reconsideration on a purely legal issue).

This Court correctly articulated the standard: "A breach of the implied warranty of merchantability means that the product did not possess even the most basic degree of fitness for ordinary use." 1/24/17 Order 25; *see also id.* at 26 ("[I]t is the defect itself, rather than some theoretical imperfection, that must exist during the warranty period, and that defect must be so severe as to cause the product to fall below the 'minimal level of quality' guaranteed by the warranty.") (citation omitted). The decision in *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012), quoted by plaintiffs, makes this

19

clear.  The *Keegan* Court explained that "a plaintiff claiming breach of an implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Keegan*, 838 F. Supp. 2d at 945 (citation omitted).  That is the test this Court correctly applied.

Moreover, whether or not Carrier and other HVAC manufacturers accepted pre-treated *compressors* from Emerson (compressors that plaintiffs are alleging were themselves defective) says nothing about whether A/C Re-new restored plaintiffs' clogged *HVAC systems* to operation.  It is the functioning of plaintiffs' HVAC systems that matters when it comes to plaintiffs' breach of implied warranty claims.  *See, e.g.*, *Keegan*, 838 F. Supp. 2d at 945 ("[A] plaintiff claiming breach of an implied warranty of merchantability must show that ***the product*** 'did not possess even the most basic degree of fitness for ordinary use.'").  At bottom, the continued operation of each of plaintiffs' HVAC systems without incident is fatal to plaintiffs' implied warranty claims.[10]

## C.    Plaintiffs' Proposed Amendments Do Not Cure Plaintiffs' Failure To Provide Notice To Carrier Of Their Warranty Claims

To revive their warranty claims, plaintiffs must also deal with the Court's holding that four plaintiffs (Oddo, LaSala, Kimball, and Klinge) could not bring warranty claims because they had failed to provide notice to Carrier of a request for repair for their clogged TXVs, as required by both statute and the warranties themselves.  1/24/17 Order at 11.  On that score, the Court held that a letter Mr. Oddo had sent to Carrier was insufficient because "Oddo's system had already been injected with A/C Re-New."  *Id.* at 12-13; *see also id.* at 13 ("Indeed, in his letter, Mr. Oddo did not ask UTC to cure any defect in *his* HVAC

---

[10] Carrier previously moved to dismiss the implied warranty claims of plaintiffs LaSala and Lamm based on lack of privity.  *See* Carrier Mot. to Dismiss 24 n.9 (ECF No. 40); Carrier Reply 15 n.10 (ECF No. 44).  The Court noted but did not reach this argument.  *See* 1/24/17 Order 25-26.  Plaintiffs have offered no additional allegations that would cure this deficiency, and so amendment as to LaSala and Lamm would be futile on this basis, as well. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009) ("Florida law requires privity of contract to sustain a breach of implied warranty claim."); *Whitehead v. John Bleakley RV Ctr., Inc.*, 2010 WL 925091, at *7 (N.D. Ga. Mar. 8, 2010) ("Under Georgia law, a warranty of merchantability clearly arises out of a contract of sale of goods and can only run to a buyer who is in privity of contract with the seller.").

system."). The Court further "agree[d] with Carrier that Oddo's letter did not provide sufficient notice of the alleged defects in LaSala, Kimball, or Klinge's system because the letter makes no mention of them at all." *Id.* Referencing the fact that Carrier's warranties "require 'a *specific* request for repair, replacement, or other correction of *the* product,'" the Court held that "Oddo's general request that UTC '[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants,' is not such a specific request with respect to his own system or the systems of LaSala, Kimball, or Klinge." *Id.* Plaintiffs claim they can fix the problems the Court identified by citing to pre-complaint correspondence with a Carrier in-house lawyer that plaintiffs have obviously possessed since before this case was even filed.

Before getting to that correspondence, however, it is important to note at the outset that *all* plaintiffs' warranty claims based on the alleged harm caused by A/C Re-New fail for lack of notice. As Carrier argued in its motion to dismiss, plaintiffs did not provide pre-suit notice to Carrier regarding their claim that the **additive** was causing ongoing harm (because the harm caused by the additive would be distinct from the harm caused by the original TXV clog, which Carrier fixed). *See* 5/9/16 Carrier Mot. to Dismiss 13; 6/27/16 Carrier Reply 6 n.3 (ECF No. 44).

Although the Court did not reach this argument, the *Helpling* Court did and found it fatal to the breach of warranty claims there: "[A]ssuming the initial application of A/C Renew was inadequate to fix any alleged defect in Helpling's customer's unit, Plaintiffs do not allege that Helpling notified Rheem that the initial repair attempt was inadequate, or that Rheem, once it knew its initial repair attempt was inadequate, refused to remedy the continued defect." 2016 WL 1222264, at *7. Plaintiffs' failure to provide pre-suit notice for any additive-based warranty claims is likewise fatal and confirms the futility of their proposed second amended complaint. *See* 1/24/17 Order 12 (holding that Carrier's warranties "unequivocally require notice that 'stat[es] the defect or complaint and a *specific request* for repair, replacement, or correction of the product under warranty'").

In all events, the 2015 pre-suit correspondence that plaintiff now wishes to include in a proposed second amended complaint does not solve the notice problems the Court identified. As an initial matter, the additional correspondence from Mr. Oddo is just another "general request that UTC '[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants." 1/24/17 Order 13; *compare* Proposed 2nd Am. Compl. Ex. E (2015 correspondence to Carrier in-house lawyer requesting "replacement of all defective HVAC systems, or all such parts (including refrigerant and oil) as are necessary to remove all contaminants"). Plaintiffs' proposed amended allegations are thus no more than a request for the Court to revisit its earlier holding that such general requests fail to comply with plaintiffs' more particularized obligations under Carrier's warranty.

Plaintiffs also repeatedly allege that during the 2015 correspondence with Carrier's in-house counsel, Carrier "did not contend that Mr. Oddo had failed to provide a sufficiently specific request for remedies." Proposed 2nd Am. Compl. ¶ 42; *see also id.* ¶ 44 ("Notably, once again Defendants did not assert that Mr. Oddo had failed to provide a sufficiently specific request for repair, and their response again spoke only to Mr. Oddo's individual claims."). These new allegations do not change matters.

Carrier in its correspondence did not contend that Mr. Oddo failed to assert a sufficiently specific request for repair because Mr. Oddo did not make any request for repair *at all*. Rather, Mr. Oddo's correspondence stated that he had already completed repairs to his HVAC System. *See* Proposed 2nd Am. Compl. Ex. C ("Mr. Oddo's … first acute system failure due to a sticking TXV occurred in August 2015, as which time A/C Re-new was injected into the system."). In fact, Carrier's letter specifically stated that "we have no record that Mr. Oddo ever submitted a warranty claim to Carrier." *Id.*, Ex. B; *see also id.*, Ex. D ("It appears from your letter that Mr. Oddo's air conditioning system is currently functional following the injection of A/C Re-new in August 2015. We have no record of Mr. Oddo making a warranty claim with Carrier, nor does your letter assert otherwise."). It would have been nonsensical for Carrier to "assert that Mr. Oddo had failed

22

to provide a sufficiently specific request for repair," Proposed 2nd Am. Compl. ¶ 44, because Mr. Oddo was making no such request in the first place.

It is also irrelevant, as plaintiffs claim, that it "would have been impossible to provide more specific pre-suit notice of the harm caused by A/C Re-New because defendants concealed this information from them." Pls.' Br. 21. Plaintiffs are confusing notice under the CLRA and similar consumer protection statutes with notice under Carrier's warranty and the laws governing warranty notice. As to the latter, plaintiffs had to request repairs under the warranty. *See* 1/24/17 Order 12-13. Plaintiffs failed to request repairs, and nothing Carrier allegedly concealed prevented plaintiffs from doing so when their HVAC systems malfunctioned (plaintiffs likely did not provide notice because their units are *not* malfunctioning). Instead of providing notice, Mr. Oddo proceeded with having his system repaired independent of Carrier's warranty. That does not constitute compliance with the statutory and contractual requirements.[11]

Finally, even if Mr. Oddo's letter had constituted notice regarding his own warranty claim, plaintiffs' proposed amendments do nothing to address the additional deficiency the Court identified, namely, that Mr. Oddo's letter cannot serve as a notice of warranty claim on behalf of other plaintiffs. *See* 1/24/17 Order at 13. Nothing in the additional correspondence described by plaintiffs and attached as exhibits to the proposed second amended complaint mentions the other plaintiffs, which leaves this deficiency uncured.

---

[11] Plaintiffs renew their argument that "consumers who purchased their HVAC systems through a dealer have no duty to provide pre-suit notice of a breach of warranty claim to a manufacturer with whom they have not dealt." Pls.' Br. 16; *see also* Opp. to Mot. to Dismiss at 6-7. This argument does not square with plaintiffs' obligations under Carrier's written warranty, *see* 1/24/17 Order 12-13 ("The warranties unequivocally require notice that 'stat[es] the defect or complaint and *a specific request* for repair, replacement, or correction of the product under warranty, mailed at least thirty (30) days before pursuing any legal rights or remedies."), or plaintiffs' obligations under relevant statutory provisions. *See id.* at 12; 5/9/16 Carrier Mot. to Dismiss at 8-9 (citing cases). This is another example of plaintiffs using a motion for leave to amend as cover for an untimely motion for reconsideration on a legal issue.

## III. ALLOWING PLAINTIFFS TO AMEND A SECOND TIME WOULD PREJUDICE CARRIER

Plaintiffs' motion to amend should also be denied as prejudicial.  The Ninth Circuit has emphasized that prejudice generally "results where allowing amendment would impose additional litigation costs that could have easily been avoided."  *AmerisourceBergen*, 465 F.3d at 957.  Since plaintiff Oddo filed his initial complaint in November of 2015, Carrier has now prepared two motions to dismiss, as well as the instant response to plaintiffs' opposition brief.  These briefs have been extensive, covering 28 claims across the law of seven States and various related legal issues.  Rather than moving to amend much earlier, as detailed above, plaintiffs put Carrier and the Court through a lengthy Rule 12(b)(6) briefing process before finally coming forward with a motion for leave to file a second amended complaint, well after the time period prescribed by this Court for curing deficiencies in the warranty claims.  A third iteration of this process would force Carrier to needlessly incur unreasonable expenses and suffer further delays.

Moreover, in reliance on the Court's January 24, 2017 ruling and the plaintiffs' stated "election" not to seek leave to amend within the 14-day time period, Carrier has been collecting, reviewing, and producing documents in response to plaintiffs' extensive discovery requests.  Allowing plaintiffs leave to amend would force Carrier to deal with an uncertain scope of discovery, while at the same time engaging in further motions practice over plaintiffs' new allegations.  That would add only further uncertainty and expense to what is already a costly litigation that will soon involve inspections of all named plaintiffs' homes and HVAC systems, among other things.

In short, allowing plaintiffs to amend their complaint to reassert their warranty claims would "unfairly impose[] potentially high, additional litigation costs" on Carrier "that could have easily been avoided had" plaintiffs adhered to the Court's deadline and instructions.  *AmerisourceBergen*, 465 F.3d at 953.[12]  This prejudice, coupled with

---

[12] This case bears little resemblance to *Bolling v. Gold*, 2015 WL 2406487 (W.D. Wash. May 19, 2015).  *See* Pls.' Br. 22-23.  In *Bolling*, the court "revist[ed] its prior rulings" in light of a substantial quantity of new evidence that showed knowing misrepresentations.

1    plaintiffs' undue delay and the futility of amendment, all counsel strongly in favor of

2    denying plaintiffs' request.

3                                    **CONCLUSION**

4         For these reasons, plaintiffs' motion for leave to amend should be denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    *Id.* at *2, *4-6.  Plaintiffs' purported additions pale in comparison—and they do not fix the
      problems with their warranty theories that this Court identified in its motion to dismiss
26    ruling.  Moreover, unlike the plaintiffs in *Bolling*, here plaintiffs had "sufficient facts in
      hand" to make the arguments for amendment during the period of time that this Court
27    allowed to cure the identified deficiencies.  *Id.*  Plaintiffs declined this Court's invitation
      to amend and then ignored the Court's direction not to ask to "reopen" the motion to
28    dismiss ruling.  Ex. A (5/8/17 Hr'g Tr. 13:5).

1
2

DATED:  July 24, 2017

Respectfully submitted,

3

4

By:  */s/ Daniel A. Bress* _____

5

Daniel A. Bress
Attorney for Defendant

6

7

KIRKLAND & ELLIS LLP

8

Daniel A. Bress (State Bar No. 257305)
daniel.bress@kirkland.com
Devin S. Anderson (*pro hac vice*)

9

devin.anderson@kirkland.com
655 Fifteenth Street NW

10

Washington, DC  20001
Telephone: (202) 879-5000

11

Facsimile: (202) 879-5100

12

C. Robert Boldt (State Bar No. 180136)
robert.boldt@kirkland.com

13

Jonathan Jeffrey Faria (State Bar No. 274019)
jonathan.faria@kirkland.com

14

333 South Hope Street
Los Angeles, CA 90071

15

Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

16

17

Attorneys for Defendant
United Technologies Corporation

18

19

20

21

22

23

24

25

26

27

28