## CIVIL MINUTES – GENERAL       'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
|---|---|---|---|
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Timothy Mathews | Jonathan Faria |
| Kolin Tang | Daniel Bress |
| | Devin Anderson |

**Proceedings:**      PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Dkt. 74, filed July 7, 2017)

## I. INTRODUCTION

On November 25, 2015, plaintiff Steve Oddo filed a putative class action against defendant United Technologies Corporation ("UTC") in this Court. Dkt. 1. On February 12, 2016, UTC filed a motion to dismiss plaintiff's complaint. Dkt. 19. On February 18, 2016, both parties agreed that, in lieu of responding to the UTC's motion, Oddo would file an amended complaint pursuant to Rule 15. Dkt. 24. On March 7, 2016, Oddo and additional plaintiffs Rajene Reardon, Anthony LaSala, Linda Lamm, Keith Kimball, Norman Klinge, and Dan Gallagher, filed a first amended complaint against UTC, and added defendants Arcoaire Air Conditioning and Heating ("Arcoaire"), Carrier Corporation ("Carrier"), Bryant Heating and Cooling Systems ("Bryant"), Comfortmaker Air Conditioning and Heating ("Comfortmaker"), and International Comfort Products, LLC ("ICP"). Dkt. 27 ("AC"). In brief, plaintiffs allege injuries arising from manufacturing defects in heating, ventilation, and air conditioning units ("HVAC units") manufactured by ICP, which purportedly causes a sludge or tar to form in the system, making it likely that the HVAC units will fail at some point in the future. Id. ¶¶ 1–2.

On January 24, 2017, the Court dismissed the majority of plaintiffs' claims without prejudice—including claims for breach of express warranty and for breach of the implied warranty of merchantability—and gave plaintiffs fourteen days to file a second amended

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

complaint. Dkt. 57 ("January Order"). On February 21, 2017, after the fourteen-day period had expired, the parties filed a joint stipulation that stated "plaintiffs elected not to amend their complaint" following the January Order. Dkt. 58.

At a scheduling conference on May 8, 2017, this Court set a June 30, 2017 deadline for any motion to add plaintiffs or claims for relief. Dkt. 63. During that conference, defense counsel requested a clarification with respect to additional claims in light of plaintiffs' decision not to amend their complaint within the allotted fourteen-day period. Dkt. 82-2, Ex. A ("Hr'g Tr.") at 12:21–13:3. The Court then instructed plaintiffs' counsel:

> I am not trying to reopen my ruling on the motion to dismiss. I'm not saying that you can add claims at this juncture for those existing plaintiffs. All I'm saying is if you have a new plaintiff who somehow has a new or different claim that hasn't already been addressed by the Court, I suppose you should have the right to bring a motion to add that person with his or her unique claim, but I don't know why you'd want to do that.

Id. at 13:4–12.

On June 30, 2017, plaintiffs filed the instant motion for leave to file a second amended complaint. Dkt. 74. Plaintiffs' memorandum in support of their motion, dkt. 89 ("Memo"), and their proposed second amended complaint, dkt. 90 ("PSAC"), remain partially under seal. Plaintiffs seek to re-plead their claims for breach of warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act ("MMWA"). Id. at 1 n.1. On July 26, 2017, defendants filed a partially sealed opposition to plaintiffs' motion. Dkt. 86 ("Opp'n"). Plaintiffs filed a reply on July 31, 2017. Dkt. 87 ("Reply").

The Court held oral argument on August 7, 2017. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

## II.   BACKGROUND

### A.   The Operative Amended Complaint

In the operative AC, plaintiffs allege the following facts.  UTC manufactures and distributes heating ventilation and air conditioning ("HVAC") systems through its subsidiary, ICP.  AC ¶ 56.  ICP is a wholly owned subsidiary of UTC and manufactures HVAC brands including, but not limited to, Carrier, Bryant, Arcoaire, Comfortmaker, and Heil.[1]  Id. ¶ 57.

Plaintiffs seek to recover damages that arose from an alleged manufacturing defect in their HVAC systems that has caused widespread failures of Thermal Expansion Valves ("TXVs") used in the units.  Id. ¶ 1.  The TXV "is a precision valve that controls the expansion of refrigerant central to the cooling process."  Id.  Plaintiffs allege that

> [t]he defect arises from a chemical rust inhibitor added to the manufacturing process . . . which was incompatible with the refrigerant and lubricating oil used in the HVAC systems.  The rust inhibitor reacts with the refrigerant and/or oil and causes a tar or sludge to form when the systems are put into service.  This sticky substance then circulates through the system, and builds up layers of deposits on the inside of the system. . . .  [T]he tar can cause the TXV to become stuck, rendering the system inoperable.

Id.  Plaintiffs further aver that Carrier was aware of the defect as early as 2013, but continued to sell affected units "unabated."  Id. ¶ 4.  Defendants determined that the contaminant was the rust inhibitor that reacted with the refrigerant and Polyolester ("POE") oil, causing the TXVs to stick.[2]  The rust inhibitor was applied to the

---

[1] Defendants assert that Carrier Corporation is the proper defendant in this action because UTC, Carrier's parent entity, does not manufacture HVAC units and Arcoaire, Bryant, Comfortmaker, and ICP do business as Carrier.  Dkt. 40 at 3 n.1.  As a result, both parties refer to defendants as "Carrier." Accordingly, the Court likewise refers to defendants collectively as "Carrier."

[2] POE oil lubricates the compressor and other moving parts within the HVAC system.  AC ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

compressors that defendants purchased from Emerson Climate Technologies, Inc. ("Emerson"), which defendants incorporated into many of their HVAC systems. Id. ¶ 16. Carrier admitted the existence of the manufacturing defect in dealer service bulletins ("DSBs") in 2014, but did not pull the affected systems from the shelves of distributors. Id. ¶ 4. Plaintiffs allege that Carrier did not distribute the DSBs publicly, therefore consumers and contractors were not made aware of the defect. Id.

Carrier's HVAC systems are sold with a ten-year limited parts warranty if the consumer registers the units, otherwise the limited warranty lasts five years. Id. ¶ 30.

According to plaintiffs, Carrier's "purported solution for the manufacturing defect under their warranty program does not cure the defect." Id. ¶ 19. Carrier initially provided replacement TXVs and a labor credit of $400 between July 2014 and October 2014. Id. ¶ 20. On October 23, 2014, plaintiffs allege that Carrier adopted a new approach by providing to contractors a new chemical, A/C Re-New, that was supposed to break apart the sludge in systems. Id. A/C Re-New was provided at no cost and in conjunction with a $195 labor credit. Id. Plaintiffs contend, however, that both of these courses of action fail to completely remedy the defect—the existence of chemical impurities in the HVAC system. Id. ¶¶ 22–23. Moreover, plaintiffs assert that "A/C Re-New *merely adds more contamination*" and that "[t]he long-term effects of this so-called fix are, at best, unknown. Id. ¶¶ 23, 25. Plaintiffs aver that "the injection of A/C Re-New itself may shorten the lifespan of the equipment or cause other issues in the future, after the warranty has expired, while the original contamination still remains in the system." Id. ¶ 25. One of Carrier's DSB even warns that a second injection of A/C Re-New "could have negative long term system effects." Id. ¶ 26.

According to plaintiffs, an adequate remedy would have included "flushing the contaminated refrigerant and oil from the systems, replacing filters, and replacing TXV valves." Id. ¶ 27. However, Carrier is allegedly refusing to provide non-defective replacements and/or fully compensate consumers and contractors. Id. ¶ 32. Plaintiffs aver that Carrier's inadequate warranty program shifts the costs associated with the manufacturing defect onto consumers and contractors. Id. ¶ 27. Plaintiffs further assert that limitations on their warranties are unconscionable because the defective HVAC units fail within weeks or months of their installation and because customers "unknowingly agreed to a grossly one-sided, warranty contract of adhesion, which they had no opportunity to negotiate." Id. ¶ 32.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Plaintiffs allege that Oddo, a resident of California, purchased a new Arcoaire-branded HVAC system in May 2015. Id. ¶ 36. Plaintiffs aver that, "[p]rior to his purchase, Oddo extensively reviewed Arcoaire's website and marketing materials . . . . The materials that Oddo reviewed advertised that Arcoaire systems are " BUILT TO LAST" and that the system he purchased was "high efficiency" and capable of up to a 16 Seasonal Energy Efficiency Ratio ("SEER"). Id. None of those materials disclosed the existence of a manufacturing defect. If they had, Oddo would not have purchased the system. Id. In addition, Oddo was unaware of Carrier's DSBs at the time of his purchase. Id. In August 2015, Oddo's system failed as a result of a "sticking TXV," and per the manufacturer's recommendation, Oddo had his HVAC unit injected with A/C Re-New. Id. ¶ 37. Oddo claims that, due to the manufacturing defect in his HVAC system, his energy bills have increased and he has incurred out-of-pocket expenses for the injection of A/C Re-New. Id. On September 8, 2015, Oddo—through his counsel—sent a certified letter "to Warranty Claims, P.O. Box 4808, Syracuse, NY 13221, stating that, 'UTC and/or its subsidiaries have failed to comply with the terms of their express warranties by failing to replace the defective systems and/or component parts.'" Id. ¶ 38. In the letter, which is attached to the operative complaint, Oddo stated that UTC has violated the California Consumer Legal Remedies Act, the Magnusson-Moss Warranty Act, and other state statutory and common law. Dkt. 27-1 ("Oddo Letter"). Oddo demanded, inter alia, that UTC "[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants" and "[c]ompensate Claimant and all purchasers and contractors who incurred costs and/or labor to repair defective systems." Id.

Reardon, a resident of Arizona, purchased a new home in October 2013 which came with two brand-new Carrier HVAC systems included. Id. ¶ 39. Plaintiffs allege that Reardon received product information from her home builder regarding the HVAC systems indicating that they were capable of up to 16 SEER. Id. However, this information did not disclose the existence of the manufacturing defect. Had the information disclosed a defect, plaintiffs aver that Reardon would have insisted that her home builder provide a non-defective system. Id. In addition, Reardon was unaware of Carrier's DSBs at the time of her purchase. Id. Soon after Reardon began using the systems in April 2015, she allegedly noticed that one of the systems was blowing hot air and contacted an authorized contractor. Id. ¶ 40. On May 1, 2015, the contractor replaced the TXV, pumped out the refrigerant, added new refrigerant, and then installed a new filter so that there would not be any "cross contamination." Id. Although the parts

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
|---|---|---|---|
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

were provided under the warranty, the labor was not, such that Reardon allegedly paid $885 "for the diagnostic visit and labor costs to fix her Carrier system." Id.

LaSala, a resident of Florida, purchased a new Carrier HVAC unit in April 2014. Id. ¶ 41. LaSala received product information along with his new system, which advertised that his unit was capable of up to of up to 15 SEER. Id. Plaintiffs assert that LaSala was unaware of Carrier's DSBs at the time of purchase and the product information he received failed to disclose the existence of a manufacturing defect. Id. LaSala would not have had the unit purchased and installed the HVAC unit had the product information disclosed the existence of a manufacturing defect. Id. In the spring of 2015, LaSala's HVAC system was allegedly not cooling, so he contacted the contractor that had installed the unit, who then injected the unit with A/C Re-New. Id. ¶ 42. The contractor did not charge LaSala for the additive or the labor, but he informed LaSala that the A/C Re-New was "just a bandaid." Id.

Lamm, a resident of Georgia, purchased two new Bryant HVAC systems costing approximately $10,000 total in March 2015. Id. ¶ 43. Prior to purchase, Lamm reviewed Bryant's website, which stated that consumers who purchased the same model would "enjoy reliable, whole-home comfort" and that the model was "designed to operate consistently and quietly with SEER ratings of 15 or higher." Id. The Certificate of Product Ratings for Lamm's system states that it has a 16 SEER. Id. Neither the Bryant website nor the Certificate of Product Ratings disclosed the existence of a defect. Id. Plaintiffs allege that Lamm would not have purchased her HVAC units if that material had disclosed a defect. Id. In addition, Lamm was unaware of Carrier's DSBs at the time of her purchase. Id. In June 2015, Lamm's downstairs system allegedly completely shut down. Id. ¶ 44. On June 25, 2015, an authorized contractor dispatched a service technician to her home, who reported injecting A/C Re-New as part of Bryant protocol. Id. Concerned about the long term effects of A/C Re-New, Lamm contacted Bryant customer service on July 8, 2015, who told her that they did not know what the long term effects of A/C Re-New would be. Id. Nonetheless, A/C Re-New was added to Lamm's system. Id.

Kimball, a resident of Maryland, purchased and installed a new Bryant HVAC system on March 2013. Id. ¶ 45. Plaintiffs allege that, prior to Kimball's purchase, Kimball reviewed Bryant brochures that he received from his installer and reviewed Bryant's website. Id. The system he purchased was advertised as being capable of up to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL       'O'

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
|---|---|---|---|
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

22 SEER. Id. None of the Bryant documents disclosed the existence of a manufacturing defect. Id. If they had, Kimball would not have purchased the system. Id. In addition, Kimball was unaware of Carrier's DSBs at the time of his purchase. Id. In May 2015, Kimball's system allegedly failed to blow cool air. Id. ¶ 46. An authorized contractor advised that repair "would entail installation of a new valve, draining of old refrigerant, adding new refrigerant and a purging of the system with nitrate to clear all contaminants, costing Kimball $900." Id. Unwilling to incur such out-of-pocket-expenses, Kimball contacted another technician, who charged him $411 to install a new TXV and filter dryer. Id. Kimball has noticed that his system's performance is slowly declining. Id.

Klinge, a resident of Missouri, purchased a Comfortmaker HVAC system in April 2015. Id. ¶ 47. Prior to purchase, plaintiffs allege that Klinge reviewed the system's product efficiency and capacity information. Id. Klinge's system was advertised as being capable of 13 SEER which is also stated in the product specifications booklet he received at the time of purchase. Id. None of these materials disclosed the existence of a manufacturing defect. Id. If they had, Klinge would not have purchased his system. Id. In addition, Klinge was unaware of Carrier's DSBs at the time of the purchase and installation of his system. Id. In the summer of 2015, Klinge's noticed that his system was not working properly. Id. ¶ 48. Klinge called the authorized installer, who recommended adding approximately four ounces of refrigerant, but this did not solve the problem. Id. Klinge called another service technician, who diagnosed the problem as a "sticking TXV." Id. In September 2015, a technician replaced the TXV, which Klinge purchased. Id. However, the system allegedly continued to fail, such that the service technician injected it with A/C Re-New. Id. Klinge has incurred approximately $433 in out-of-pocket expenses, and avers that even after the system was injected with A/C Re-New, it has failed to operate properly. Id. Klinge contacted Comfortmaker's customer service but was told that they would not do anything about this problem and would not reimburse him for his out-of-pocket expenses. Id.

Gallagher, a resident of Indiana, purchased a new Bryant HVAC system in May 2014. Id. ¶ 49. Gallagher reviewed Bryant's website and marketing materials prior to purchase. Gallagher's system was advertised as being capable of up to 16 SEER but at installation it was specified as 13 SEER because of a lack of certain equipment on the existing furnace/air handler. Id. None of the documents disclosed the existence of a manufacturing defect. If they had, Gallagher would not have purchased the unit. Id. In addition, Gallagher was unaware of Carrier's DSBs at the time of his purchase.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Gallagher's unit allegedly had two system failures within 90 days of being turned on. Id. ¶ 50. On the first failure, the indoor coil iced up and the service technician replaced the TXV. Four hours later, the same failure occurred. Id. In response, the service technician replaced the TXV and the indoor coil. Id. Gallagher contacted Bryant by phone on August 26, 2014, but Bryant allegedly did not reveal the ongoing TXV problem. Id. In early May 2015, Gallagher's system allegedly stopped working, and it was serviced and injected with A/C Re-New. Id.

### B. The Court's January Order

As is relevant to plaintiffs' instant motion, the Court reached the following conclusions with respect to plaintiffs' warranty claims in its January Order:

1. Oddo, LaSala, Kimball, and Klinge failed to fulfill the terms of their express warranties because they did not afford Carrier with a reasonable opportunity to cure their HVAC system defects—as was required by the applicable state statutes. January Order at 10–13. Although Oddo sent a pre-litigation notice to Carrier that he intended to file a class action under the Consumer Legal Remedies Act, Oddo's letter did not provide "*a specific request* for repair, replacement, or correction of the product under warranty, mailed at least thirty (30) days before pursuing any legal rights or remedies"—as was required by the warranties. Id. at 12. The Court found that Oddo's letter did not provide such notice because Oddo's system had already been injected with A/C Re-New and Oddo did not allege that his system continued to fail after that intervention. Id. at 12–13. Indeed, in his letter, Oddo did not ask UTC to cure any defect in *his* HVAC system. Finally, the Court concluded that Oddo's letter did not provide sufficient notice of the alleged defects in LaSala, Kimball, or Klinge's systems because the letter makes no mention of them at all. Id. at 13.

2. Plaintiffs failed to plead that the repairs provided, including the injection of A/C Re-New, did not satisfy Carrier's obligations under the warranties. Id. at 23. The Court concluded that "[t]he possibility that A/C Re-New might cause a later malfunction is not enough to allege a breach of the warranties." Id. While it is true that plaintiffs provided greater specificity with respect to the potential for A/C Re-New to cause harm than did the plaintiffs in Helpling v. Rheem Manufacturing Company, No. 1:15-cv-2247-WSD, 2016 WL 1222264 (N.D. Ga. Mar. 23, 2016), the Court concluded that such specificity did not overcome the flaw that their claims share with the Helpling plaintiffs: plaintiffs

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

failed to allege that their HVAC units continued to malfunction after the injection of A/C Re-New. January Order at 23. Rather, plaintiffs alleged only the possibility of future harm arising from the injection of A/C Re-New—not current failures of their units. Accordingly, the Court concluded that plaintiffs failed to plead that Carrier did not comply with its obligations under the express warranties. Id. at 24.

3.      Similarly, plaintiffs did not adequately plead that Carrier's warranties failed of their essential purpose because plaintiffs did not allege that the repairs on their HVAC systems failed to render their units workable. Id. at 21.

4. Plaintiffs failed to state claims for breach of their implied warranties because they did not allege "that the injection of the A/C Re-New into their systems has resulted in any current defect in their HVAC systems." Id. at 26. In fact, plaintiffs did not allege at all that their units were not operational. Because plaintiffs failed to allege a fundamental defect that rendered their HVAC systems unfit for their ordinary purposes, the Court found that plaintiffs failed to state claims for breach of their implied warranties. Id.

Consistent with these findings and conclusions, the Court dismissed plaintiffs' claims for breach of express and implied warranties and for the violation of the MMWA with leave to amend within 14 days. Id. at 25–26, 40.

## C.      Plaintiffs' Proposed Second Amended Complaint

Plaintiffs request leave to file a second amended complaint in order to re-plead their claims for breach of warranty, breach of implied warranty, and violations of the MMWA. Memo at 1 n.1. Plaintiffs proposed Second Amended Complaint includes the following additional allegations:[3]

Plaintiffs identify the "chemical rust inhibitor" as "Ryconox." PSAC ¶ 1.

---

[3] While the Court has reviewed each of the amendments that plaintiffs propose, the Court addresses only the substantial changes that plaintiffs seek to introduce, and does not describe here the minor alterations that plaintiffs have made throughout the PSAC.

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Plaintiffs allege that, even when an acute failure of an HVAC system has not occurred, "studies performed by industry participants show that most affected systems are suffering from degraded performance and capacity." Id. ¶ 2. Lenox, another manufacturer or HVAC systems, performed tests on a random sample of systems containing the "rust inhibitor defect[.]" Id. ¶ 19. Of the 24 systems tested, Lenox found that the majority had degraded performance, even though most of the customers had not complained. Id. Half the systems tested had more than a 15 percent loss of performance. Id. The Lenox study also showed that half of the systems injected with A/C Re-New "recovered temporarily but soon experienced degraded performance again." Id. ¶ 24.

Defendants have known since the mid-1990's that sulfur-containing rust inhibitors, like Ryconox, could react with POE oil to cause TXV clogs. Id. ¶ 17. When Emerson, the compressor manufacturer, initially tested Ryconox in 2010, it resulted in residue forming on the TXV pin. Id. Defendants worked with Emerson to test the effects of A/C Re-New before defendants began advising contractors to inject A/C re-New into HVAC systems with stuck TXVs. Id. ¶ 26. The results of these tested showed that:

> (1) injecting A/C/ Re-New causes acidity far above generally acceptable levels; (2) A/C Re-New, and the resulting acidity, cause the copper used in pipes and coils to dissolve and deposit inside the compressor . . . (3) A/C Re-New dissolves lead used in the compressor bearings; (4) A/C/ Renew cause a significant increase in "hydrolysis," or chemical breakdown, of the oil in the systems; and (5) A/C/ Re-New causes swelling of certain non-metalic materials, such as neoprene, that are commonly used for gaskets, such as in the TXV. Emerson's testing also showed abnormal compressor wear on all tested systems that were run with A/C/ Re-New[.]

Id. ¶ 26. Plaintiffs provide further details about the technical results of this testing. Id. ¶¶ 93–105; 108–12. It is impossible to see the damages caused by A/C Re-new without conducting a "tear down" of the HVAC—thereby destroying the system—and measuring wear against known parameters. Id. ¶ 106. Emerson conducted this type of "tear down" testing on eight systems injected with A/C/ Re-New and "every single one of them reflected damage." Id. ¶ 107. Notwithstanding the finding that injecting A/C Re-New leads to the abnormal wear of compressor components, Emerson concluded that "the value of AC Renew out-weighs the risks." Id. ¶ 113. Emerson shared its testing data

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

with defendants, who nevertheless implemented A/C Re-New injections and did not disclose to customers that it would harm their systems.  Id.

By August 2014, defendants knew what was causing the TXV problems.  Id. ¶ 88. Defendants prepared a white paper, which they provided to Emerson, that determined "conclusively that the root cause of the TXV contamination [was the] rust inhibitor called Ryconox."  Id.  While defendants and Emerson "worked out a plan to inject affected units with A/C Re-New," Emerson agreed to reimburse defendants the amounts they paid to conduct the injections.  Id. ¶ 115.

Plaintiffs allege that HVAC systems containing Ryconox and injected with A/C re-new "do not pass without objection in the trade."  Id. ¶ 116.  Many manufacturers, including defendants, have returned unused compressors containing Ryconox back to Emerson.  Id. ¶ 117.  By 2015, Emerson had millions of dollars of inventory of unused compressors containing Ryconox.  Id. ¶ 118.  Emerson began injecting these compressors with A/C Re-New at its factors in order to res-sell them to HVAC manufacturers.  Id. However, the majority of the largest HVAC manufacturers, including defendants, refused to accept the "remediated" compressors containing A/C Re-New.  Id.

While defendants' warranties exclude coverage for refrigerant, they do not exclude coverage to replace contaminated oil.  Id. ¶ 28.  Defendants implemented a program that fails to remedy the original defect—the presence of Ryconox—and instead causes further damage, "leaving the systems in a defective state."  Id.; see also id. ¶¶ 165, 215, 258, 307, 338, 400.  Replacing a TXV is costly and time intensive.  Id. ¶ 90.  Replacing Ryconox contaminated oil in the HVAC is even more so, and may require replacing the entire compressor.  Id.

In Oddo's September 8, 2015 letter, Oddo stated that defendants have been instructing service personnel to inject the systems with A/C-Renew, rather than repair or replace the defective parts and/or systems pursuant to the warranty.  Id. ¶ 40.  Thus, plaintiffs contend that Oddo's letter "expressly notified Defendants that plaintiff believed injection of A/C/ re-New did not comply with the terms of the warranty[.]"  Id.  Plaintiffs now include in the PSAC the subsequent correspondence between defendants Oddo's counsel and Carrier's in-house counsel.  Id. ¶¶ 42–49 & Exs. A–F.  Namely:

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

- On September 18, 2015—in response to Oddo's September 8 letter—Carrier's director of legal affairs, Marc Moss, requested eight categories of information regarding Oddo's system.  Id. ¶ 42.  Moss did not contend that Oddo failed to provide a sufficiently specific request for remedies.  Id.

- On October 16, 2015, Oddo's counsel, Timothy N. Mathews, responded that Moss's request for individual information suggested that defendants did not consider Oddo's demand to provide an appropriate remedy to all affected persons.  Id. ¶ 43.  As a result, Mathews concluded that Moss's response was not an attempt to comply with Oddo's demands on behalf of himself and similarly situated persons.  Id.  Mathews provided the eight categories of information requested and stated that he was ready to "discuss a reasonable resolution[.]"  Id.

- On October 29, 2015, Moss responded via email.  Id. ¶ 44.  In the email, Moss disputed that Mathews had provided sufficient information for defendants to determine the basis of any potential claims that Oddo may have had.  Id.  Moss also asserted that Oddo did not identify the specific damages that Oddo claims to have incurred or the specific marketing statements that were misleading.   Plaintiffs again note that defendants did not affirmatively assert that Oddo failed to provide a sufficiently specific request for repair.  Id.

- On November 21, 2015, Mathews responded stating that he had already responded to the questions that defendants asked.  Id. ¶ 45.  Mathews stated that he had already set forth the specific relief sought, including replacement of all defective HVAC systems or all parts that are necessary to remove all contaminants, and compensation for costs and labor to make repairs.  Because Moss never indicated they would provide an appropriate remedy, Mathews stated that he believed that "we have fully complied with and exhausted the requirements of the CLRA, [MMWA], and any other notice requirements that could apply to our claims."  Id.

- On November 24, 2015, Moss wrote that defendants were amenable to meeting to discuss Oddo's air conditioning system.  Id. ¶ 46.  On the same day, Mathews responded, requesting clarification as to whether defendants intended to discuss class-wide remedies or merely Oddo's system.  Id. ¶ 47.  Mathews also asked whether defendants would agree to a class-wide tolling agreement.  Id.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

- On November 25, 2015, Moss wrote that defendants were not interested in discussing class-wide relief or remedies. Id. ¶ 48. Mathews responded that he needed to file the lawsuit promptly to protect the interests of the putative class members. Id. ¶ 49.

## III. LEGAL STANDARDS

As a preliminary matter, the Court must decide whether Federal Rule of Civil Procedure 15(a) or 16(b) applies. Generally, a court grants a motion for leave to amend pleadings pursuant to the permissive standard of Rule 15(a). Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997). However, once the district court enters a scheduling order establishing a deadline for amending pleadings, Rule 16(b) applies. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). This is because once the scheduling order is in place, the court must modify the scheduling order to permit an amendment. William W. Schwarzer et al., Federal Civil Procedure Before Trial § 8:1469 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)). Here, plaintiffs assert that their motion "is timely under the June 30, 2017 deadline set by the Court for any request to file amended pleadings or to add parties." Memo. at 6, n.8. Carrier also identifies Rule 15 as the proper standard, thus conceding that Rule 15 applies. Opp'n at 6.

Rule 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has made clear that this policy "is to be applied with extreme liberality." Owens v. Kaiser Found. Health Plan, 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)). Where leave to amend is sought, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: [1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003)). "Some courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). However, "[u]ndue

delay is a valid reason for denying leave to amend." Id. (quotation marks omitted); but see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend.").

## IV. DISCUSSION

### A. Bad Faith

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." Wizards of the Coast LLC v. Cryptozoic Entm't LLC, 309 F.R.D. 645, 651 (W.D. Wash. 2015); Covert v. City of San Diego, No. 15-cv-2097-AJB-WVG, 2016 WL 7117364, at *5 (S.D. Cal. Dec. 6, 2016) (same).[4]

Plaintiffs' request for leave to file a second amended complaint appears to be an attempt to circumvent: (a) the Court's clear statements regarding the assertion of additional claims by existing plaintiffs; and (b) plaintiffs' own representation to the Court that it had elected not to amend their complaint following the Court's January order, see dkt. 58. Plaintiffs' request contradicts the Court's express instructions that, by setting a June 30, 2017 deadline for any motion to add plaintiffs or claims for relief, the Court was "not trying to reopen [its] ruling on the motion to dismiss" and was "not saying that [plaintiffs] c[ould] add claims at this juncture for those existing plaintiffs." Hr'g Tr. at 13:4–7. Rather, the Court clarified that the June 30 deadline was intended to allow plaintiffs "to bring a motion to add [a] person with his or her unique claim" in the event that plaintiffs "ha[d] a *new* plaintiff who somehow has a *new or different claim that hasn't already been addressed* by the Court[.]" Id. at 13:7–12 (emphases added). However, plaintiffs' warranty claims are not new and they have been addressed by this Court. Plaintiffs appear to have disregarded the plain meaning of the Court's instructions and contradicted their own representations to the Court. Nevertheless, the Court finds that this conduct does not rise to the level of bad faith.

---

[4] The Ninth Circuit has also stated that bad faith exists where the proposed amendment "will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 881 (9th Cir. 1999). The Court will address the question of futility infra, see Section IV.D.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

### B. Undue Delay

"To show undue delay, the opposing party must at least show delay past the point of initiation of discovery." Saes Getters S.P.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987) (no evidence of undue delay when "suit is still in its early stages" and the moving party offers "a satisfactory explanation for their delay"). "In evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) (quotation marks omitted).

Carrier argues that plaintiffs failed to act diligently in bringing their motion because: (a) plaintiffs' counsel has known about the evidence from Emerson's testing since April 2016; and (b) the correspondence between Oddo's counsel and Carrier's in-house counsel—that plaintiffs include for the first time in the PSAC—occurred in the fall of 2015.

With respect to Carrier's first argument, the Emerson documents were subject to protective orders—issued in Emmert v. ClimateMaster, No. 5:15-cv-0458-R (W.D. Okla.)—that prohibited the use of such documents or any information contained therein for any purpose other than the Emmert litigation. See dkt. 87-1, Declaration of Timothy N. Mathews ("Mathews Decl.") ¶¶ 4–10 & Exs. A, B. A protective order was entered in this case on June 1, 2017. Dkt. 73. As a result, the Emerson documents were produced in this case on June 9, 2017. Mathews Decl. 23. Accordingly, the Court does not find that plaintiffs unduly delayed in alleging the facts contained in the Emerson documents in the instant motion.

By contrast, however, plaintiffs possessed the entirety of the correspondence between Oddo's counsel and Carrier's counsel at the time that plaintiffs initiated this action. Plaintiffs assert that adding allegations concerning notice would have been "futile" because the "ultimate outcome" on plaintiffs' warranty claims would not have changed without the additional allegations regarding A/C Re-New. Memo at 8 n.9. Plaintiffs point to no authority suggesting that "futility" is an excuse for failure to allege facts already in plaintiffs' possession. Furthermore, plaintiffs' additional evidence from the Emerson documents regarding A/C Re-New has no bearing on whether any plaintiff properly afforded Carrier with a reasonable opportunity to cure the alleged defects in

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

their HVAC systems. The Court thus finds that plaintiffs unduly delayed with respect to their new allegations regarding the correspondence between Oddo's counsel and Carrier's counsel. Accordingly, the Court finds that this factor weighs against plaintiffs' request to amend their allegations regarding notice.

### C. Prejudice to Carrier

The Ninth Circuit has found prejudice where "the new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." Morongo Band of Mission Indians, 893 F.2d at 1079. "A need to reopen discovery and therefore delay the proceedings" supports a finding of prejudice. Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999). Courts may also consider "the time and expense of continued litigation on a new theory, with the possibility of additional discovery." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989). A party also suffers prejudice when it incurs "substantial litigation costs, which a more careful reading of [the statute by the moving party] would have avoided." Id.

The parties have already begun discovery in this case. However, plaintiffs contend that Carrier will not be prejudiced if leave is granted because "discovery is at its inception." Memo at 8. Carrier, in turn, argues that it has relied on the Court's January Order and plaintiffs' stated election not to seek leave to amend as Carrier collects, reviews, and produces documents in response to plaintiffs' discovery requests. Opp'n at 24. The Court finds Carrier's arguments persuasive. Granting plaintiffs leave to amend would increase the uncertainty, expense, and burden of the litigation by reintroducing theories of liability that the Court has already dismissed and that plaintiffs agreed not to restate in an amended complaint. Accordingly, the Court finds that this factor weighs against granting leave to amend.

### D. Futility

"A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988); see also 3-15 Moore's Federal Practice - Civil § 15.15 ("An amendment is futile if it merely restates

the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

With respect to question of the proper submission of a warranty claim, the additional correspondence between Oddo's counsel and Carrier's counsel now included in the PSAC fails to cure the defects that the Court identified in its January Order. As before, the additional correspondence does not contain any assertion that Oddo's HVAC system continued to fail after it was injected with A/C Re-New. See PSAC Ex. A–F. Indeed, in Carrier's October 29, 2015 email, Moss wrote: "It appears from your letter that Mr. Oddo's air conditioning system is currently functional following the injection of A/C/ Re-new in August 2015." PSAC Ex. D. In his response, Oddo's counsel does not refute this statement. See PSAC Ex. E. As the Court has already explained, "[t]he statutory notice requirements are intended to permit manufacturers to cure a defect before owners initiate legal action." January Order at 12. The warranties unequivocally require notice that "stat[es] the defect or complaint and a specific request for repair, replacement, or correction of the product under warranty, mailed at least thirty (30) days before pursuing any legal rights or remedies." Dkt. 40-1, Request for Judicial Notice, Exs. 1–7 (emphasis added). Oddo did not request repair in the September 8 letter, or in any of the subsequent correspondence. The Court finds, as it did in the January Order, that Oddo's "general requests"—in the September 8 and November 20, 2015 letters, see Compl. Exs. A, E—that Carrier "[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants," do not constitute "specific request[s] with respect to his own system or the systems of LaSala, Kimball, or Klinge." See January Order at 13. Furthermore, plaintiffs' PSAC and request for leave do not address the Court's conclusion that Oddo's correspondence "did not provide sufficient notice of the alleged defects in LaSala, Kimball, or Klinge's systems because the letter makes no mention of them at all." See January Order at 13.[5] Finally, there is

---

[5] Citing to the Ninth Circuit's recent decision in Norcia v. Samsung Telecommunications America, LLC, 845 F.3d 1279 (9th Cir. 2017), plaintiffs argue that LaSala, Kimball, or Klinge need not have provided separate notice to Carrier because a warranty does not impose legal obligations on the consumer. See Reply at 13. In Norcia, the Ninth Circuit concluded that a buyer was not bound by an arbitration clause in a warranty. In so holding, the Ninth Circuit clarified the different obligations imposed by a contract as compared to a warranty:

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| --- | --- | --- | --- |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

no indication that plaintiffs attempted to provide proper notice since the Court's January Order. Accordingly, plaintiffs' PSAC does not alter the Court's conclusion that Oddo, LaSala, Kimball, and Klinge's express warranty claims fail because they did not afford Carrier with a reasonable opportunity to cure their HVAC system defects.

In its January Order, the Court concluded that plaintiffs' express warranty claims also failed because plaintiffs did not allege that their HVAC units continued to malfunction after the injection of A/C Re-New. January Order at 23. The Court reached this conclusion—even though plaintiffs' allegations regarding A/C Re-New were more specific than allegations raised in the <u>Helpling</u> case—because plaintiffs failed to allege *current* failures of their HVAC units. <u>Id.</u> Plaintiffs now argue that the PSAC cures any deficiency arising from their speculative allegations of injury because the PSAC alleges, based on testing performed by Emerson, that A/C Re-New causes actual damage to HVAC systems. Memo at 10. However, even in the PSAC, plaintiffs do not allege that their units continued to malfunction after the injection of A/C Re-New. Any harm to plaintiffs remains speculative. Thus, evidence regarding the damaging effects of A/C Re-

> Language in a written warranty agreement is 'contractual' in the sense that it creates binding, legal obligations on the seller, but a warranty does not impose binding obligations on the buyer. Rather, warranty law focuses on the seller's behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller in essence agreed to sell. . . . A buyer may have to fulfill certain statutory conditions to obtain the benefit of a warranty. But a warranty generally does not impose any independent obligation on the buyer *outside of the context of enforcing the seller's promises*.

845 F.3d at 1288 (citations and quotation marks omitted, emphasis added). Contrary to plaintiffs' interpretation, <u>Norcia</u> makes clear that a warranty *may* impose an independent obligation on a buyer when the buyer seeks to enforce the seller's promises. Indeed, the <u>Norcia</u> court stated that its reasoning applied only to warranty provisions that attempted to impose duties beyond the warranty context: "A condition that must be satisfied before a consumer can enforce a warranty is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself." <u>Id.</u> The notice provision of Carrier's warranties is precisely an obligation on the buyer that falls *within* the context of enforcing Carrier's promises. Thus, the Court finds plaintiffs' argument unavailing.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

New—while perhaps pertinent to plaintiffs' remaining claims—does not cure plaintiffs' express warranty claims.

Plaintiffs argue, however, that their express warranty claim is now adequate because "[c]ase law establishes that manufacturers do not comply with their warranty repair obligations by providing repairs that devalue or damage the produce, nor by repairs that result in creating or perpetuating a defective condition." Memo at 10. The Court first notes that plaintiffs made the same argument regarding inadequate repair in their opposition to Carrier's motion to dismiss. See dkt. 43 at 13. Thus, plaintiffs' argument is in the nature of a motion for reconsideration of the Court's January Order. However, plaintiffs do not cite any newly decided cases. Furthermore, in the cases that plaintiffs do cite, the consumers alleged that their products did not function properly even *after* the manufacturers' attempts to repair. For example, plaintiffs cite to Rutledge v. Hewlett-Packard Co., 238 Cal. App. 4th 1164 (2015), in which the court concluded there was a triable issue whether the defendant complied with its warranty by replacing one faulty part with another faulty part, and then returning the product to the plaintiff in faulty condition. Id. at 1184–85. However, in Rutledge, the plaintiff "presented evidence that she continued to experience the same [] problems after submitting her [product] for repeated repairs." Id. at 1184. Here, plaintiffs do not allege that they experienced problems with their HVAC after the injection of A/C Re-New. In Brothers v. Hewlett-Packard Co., No. 06-cv-02254-RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007), the court concluded that "[u]se of an inferior part that results in a lower performing computer does not constitute adequate repair or replacement under the warranty." Id. at *5. However, in Brothers, one of the plaintiffs, Michael Brothers, alleged that the manufacturer replaced the motherboard of his notebook computer and "[*f*]ive months *later*," the notebook "again overheated and the display screen exhibited 'graphics distortion.'" Id. at *1. The manufacturer expressly informed the other plaintiff, Gregory McDaniel, that it was repairing McDaniel's notebook with a "downgraded replacement motherboard" and McDaniel alleged that, once the downgraded motherboard was in place, his notebook failed to function as promised. Id. Here, plaintiffs do not allege that their HVAC systems failed to function as promised after the injection of A/C Re-New. Plaintiffs also cite to In re Toyota Motor Corp., 754 F. Supp. 2d 1145 (C.D. Cal. 2010), in which the court found:

The essence of Plaintiffs' allegations regarding repairs is that, with respect to any [sudden unintended acceleration]-related repair request, any purported

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
|---|---|---|---|
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

repair was itself defective because no adequate brake-override system was
installed and/or because the repairs pursuant to the floor mat and pedal
recalls did not address the root cause of the [sudden unintended acceleration
("SUA")] events.  At the pleadings stage, such allegations are sufficient to
fall within the scope of the 'repair or adjustment' warranty limitation.

Id. at 1178 (citation omitted).  But plaintiffs in Toyota alleged that "[e]ven after the floor
mat and the sticky pedal recalls, . . . . incidents of SUA persisted." Id. at 1158.  Here,
however, plaintiffs do not allege that their HVACs continue to experience TXV clogging
after the injection of A/C Re-New.  Indeed, in the vast majority of cases that plaintiffs
cite, the consumers alleged or presented evidence of continued malfunction *after*
attempted repair.  See Jensen v. BMW of N. Am., Inc., 35 Cal. App. 4th 112, 120 (1995)
(finding substantial evidence to support a verdict that defendant violated the Song-
Beverly Consumer Warranty Act where plaintiff had taken her car in for repairs, but the
brake problem recurred intermittently *after* such repairs); Robertson v. Fleetwood Travel
Trailers of California, Inc., 144 Cal. App. 4th 785, 799–800 (2006) (there was substantial
evidence presented at trial to support that jury's determination that defendant failed to
repair the defect where "the same water leak problem . . . persisted despite several repair
attempts"); Forward-Rossi v. Jaguar Land Rover N. Am., LLC, No. 2:16-cv-00949-CAS-
KS, 2016 WL 3396925, at *4 (C.D. Cal. June 13, 2016) ("in light of plaintiff's
allegations that she returned the Vehicle to Penegon West's dealership on 'numerous
occasions' and that Penegon West still failed to adequately repair the Vehicle, plaintiff
appears to have, at a minimum, a facially legitimate claim" that would allow for joinder);
Patron Aviation, Inc. v. Teledyne Indus. Inc., 267 S.E.2d 274, 276–78 (Ga. Ct. App.
1980) (allowing a breach of warranty claim to proceed where plaintiffs presented
evidence of engine overheating and excessive oil consumption *after* the manufacturer
provided a replacement part); Feinour v. Ricker Co., 566 S.E.2d 396 (Ga. Ct. App. 2002)
(concluding that the trial court erred in granting summary judgment against plaintiff on
her breach of express warranty claim on the basis of the statute of limitations because
"the workman only temporarily or cosmetically corrected the underlying [water leakage]
problem" which actually resulted in "major water damage to the infrastructure of the
house"); Golub v. Milpo, Inc., 522 N.E.2d 954, 959 (Mass. App. Ct. 1988) (reversing
summary judgment against plaintiff on her warranty claim where "Milpo subsequently
endeavored to repair the leaks and damage, but, the plaintiff alleges, the leaks continued
nevertheless"); but see Houston v. Country Coach, Inc., No. 07-cv-00859-HRL, 2008
WL 2783485, at *9–10 (N.D. Cal. July 17, 2008) ("While defendant did promptly repair

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

the leak, it made little or no attempt to address the consequences likely to occur from the permanent presence of the water in the roof and walls. It certainly never advised Houston of the likely long term effects of the water intrusion. The defendant's failure was not known or knowable to plaintiff until November 2006. If proven, plaintiff would be entitled to damages . . . . The court, however, concludes that none can be awarded because of a failure of proof."). Thus, even if plaintiffs request for reconsideration were properly before the Court, plaintiffs do not offer any basis for reconsidering its prior ruling. See Fed. R. Civ. P. 60.[6]

Plaintiffs contend that the PSAC now adequately alleges that Carrier's warranties fail of their essential purpose. As the Court explained in its January Order, "a limited "repair or replace" warranty fails of its essential purpose when a warrantor fails to successfully repair defects within a reasonable time. See January Order at 20 (collecting cases). Moreover, "courts have concluded that plaintiffs failed to adequately plead that warranties failed their essential purposes where the plaintiffs did not allege that their HVAC units failed to provide cooling after defendants took steps to repair or replace the systems." Id. at 20–21 (collecting cases). Plaintiffs do not cure the defect that the Court identified in its January Order because plaintiffs do not allege in the PSAC that the repairs on their HVAC systems failed to render their units workable.

With respect to their implied warranty claim, plaintiffs contend that the PSAC states a claim because they now allege that systems injected with A/C Re-New do not "pass without objection in the trade," Memo at 13; see Cal. Civil Code § 1791.1(a); Fla. Stat. Ann. § 672.314(2); Ga. Code Ann. § 11-2-314(2); Md. Code Ann., Com. Law § 2-314(2); Mo. Ann. Stat. § 400.2-314(2); Ind. Code Ann. § 26-1-2-314(2) (state laws provide that goods must pass without objection in the trade to be merchantable). The phrase "pass without objection" is "more or less a synonym of 'fit for ordinary

---

[6] At oral argument, plaintiffs' counsel acknowledged that plaintiffs' HVAC systems continue to run, but again argued that evidence from the Emerson documents demonstrates that the harm from A/C Re-New is not speculative. However, as the Court explained in its January Order, further specificity regarding the likelihood of harm from A/C Re-New does not overcome plaintiffs' failure to allege that their HVAC units malfunctioned *after* the injection of A/C Re-New. The weight of authority in the "faulty repair" causes, as demonstrated above, requires plaintiffs to allege that their products did not function properly even after the manufacturers' attempts to repair.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

purposes'" though the "phrase focuses more clearly on trade usage, similar goods, and the seller's conduct."  1 White, Summers, & Hillman, Uniform Commercial Code § 10:31 (6th ed.).  Because "passing without objection in the trade and ordinary fitness . . . overlap to some degree[,]" "a core test of merchantability is fitness for the ordinary purpose for which such goods are used."  Brand v. Hyundai Motor Am., 226 Cal. App. 4th 1538, 1546 (2014) (quotation marks omitted).  Indeed, courts require plaintiffs to allege and establish the absence of fitness for ordinary purpose in order to proceed on implied warranty claims.  See Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012) ("[A] plaintiff claiming breach of an implied warranty of merchantability *must show* that the product did not possess even the most basic degree of fitness for ordinary use." (quotation marks omitted, emphasis added)); Ram Head Outfitters, Ltd. v. Mecham, No. 09-cv-1382-PHX-MHM, 2011 WL 1429623, at *7 (D. Ariz. Apr. 14, 2011) ("Accordingly, to make out a claim under this implied warranty, [plaintiff] must have proven at trial that: (1) [defendant] is a merchant; and (2) the Plane was not fit for the ordinary purpose for which it was sold."); Jovine v. Abbott Labs., 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) ("A cause of action for breach of implied warranty of merchantability *requires allegations* that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was *defective* when transferred from the warrantor, and (4) the defect caused the injury." (emphases added)); Soto v. CarMax Auto Superstores, Inc., 611 S.E.2d 108, 110 (Ga. Ct. App. 2005) (when considering whether plaintiff's car passed without objection in the trade, the court found that the "minor problems" about which plaintiff complained "never rendered the vehicle unusable" and therefore did not make the car unmerchantable); Jones v. Koons Auto., Inc., 752 F. Supp. 2d 670, 686 (D. Md. 2010) ("There is no suggestion that the car was unfit for use or otherwise functionally useless.  Therefore, Jones' breach of the implied warranty of merchantability claim will be dismissed."); Bailey v. Atl. Auto. Corp., 992 F. Supp. 2d 560, 575 (D. Md. 2014) (recognizing that "[t]he Maryland appellate courts have not yet addressed directly whether a vehicle can be considered non-merchantable . . . in the absence of a claim that the [product] suffers from some tangible defect (i.e., a design or manufacturing defect) or has some concrete physical problem that renders it of a lesser quality than other [products] of the same contract description" and "doubt[ing] . . . that there would be a valid claim based upon a violation of an implied warranty of merchantability" where plaintiff does not allege a tangible defect); Corwin v. Connecticut Valley Arms, Inc., 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) ("[I]f Plaintiff wishes to pursue a general implied

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

warranty of merchantability claim, he must provide facts that detail how the [product] was defective."); Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (finding plaintiffs fail to allege injury resulting from the alleged breach of implied warranty of merchantability because "[p]laintiffs have not alleged any *actual manifestation of a defect* or instance of diminished resale value resulting from the alleged defect"). As described above, plaintiffs do not allege in the PSAC that the injection of the A/C Re-New into their HVAC units has resulted in any current defect in their units. Because plaintiffs again fail to allege a fundamental defect that renders their HVAC systems unfit for their ordinary purpose, plaintiffs' proposed amendments to their implied warranty claim would be futile.

As described above, plaintiffs fail to allege facts in their PSAC that remedy their express or implied warranty claims. Accordingly, the Court finds that this factor weighs against granting leave to amend. The Supreme Court has stated that leave to amend should be freely given because "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Where, as here, plaintiffs' new allegations would not enable plaintiffs to assert claims that are the proper subject of relief, the Court's denial of plaintiffs' request for leave is consistent with the liberal standards of Rule 15.

### E. Previous Amendment

Plaintiffs have amended their complaint once before. See AC. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props.., 866 F.2d at 1160. Accordingly, this factor weighs against granting leave to amend.

### F. Summary

The Court finds that leave to amend is not appropriate under Rule 15. Four of the five traditional factors counsel against amendment, including the most important factor: prejudice. Given the balance of the factors, the Court denies plaintiffs' motion for leave to file a second amended complaint. Nevertheless, the Court notes that the evidence arising from the Emerson documents need not be included in plaintiffs' complaint to qualify for admission in support of plaintiffs' remaining claims. Nothing in the Court's

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:15-cv-01985-CAS(Ex) | Date | August 14, 2017 |
| Title | STEVO ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

order should suggest that plaintiffs are precluded from relying on evidence from the <u>Emmert</u> case that was recently made available for use in this case.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiffs' motion for leave to file a second amended complaint.

IT IS SO ORDERED.

|  | 00 | 13 |
|---|---|---|
| Initials of Preparer | CMJ | |